Statement of the Case.
MONROE, J.
Plaintiff sues the defendant firm and Robert S. and Theodore Mandel, its members, for $2,611.25, balance alleged to be due as rent of certain premises in Shreveport under a lease running from January 1, 1907, to December 31, 1910, and for $171, alleged to be due for beer, and $40 for whisky. Robert and Theodore Mandel answered separately, but to the same effect.
The defenses relied on in this court and which are set up in the alternative are that the premises were leased for barroom purposes, and that the lease ceased to be operative, because, by a vote of the people, the sale of liquor was prohibited in Caddo parish after January 1, 1909; that during said month a fire occurred which rendered said premises uninhabitable, and authorized the cancellation of said lease; that plaintiff consented that the lease should be canceled, and entered into a new contract, whereby it leased said premises by the month to Theodore Mandel, and that Robert Mandel, to its knowledge, withdrew from the firm and the business, and was not a party to said new contract; that the judgment of the district court is erroneous, in that it condemns defendants in solido and was made executory at once for the whole amount due and to-become due under the lease, whereas defendants, in any event, should only have been condemned jointly, and the judgment made ex-ecutory in accordance with the terms of the lease. The lease itself does not specify the purpose for which the premises were to be used, and as a matter of fact portions of the building were either used or rented by defendants for restaurant and boarding house purposes. The building, worth about $5,000. was damaged by the fire to' the extent of $200, and was repaired within 16 days, and an allowance of $5 a day or a total of $80 was made and accepted for deprivation of its use during that time. Whilst the repairs were going on an interview took place between Frank Pugh and J. F. Cunningham (representatives for certain purposes of the plaintiff) and the two Mandéis, at which the latter, or perhaps Theodore Mandel, requested a reduction in the rent, and was told by Cunningham that no change could be made-in the lease, but that the company would reduce the price of beer by $1 per keg, and that such reduction would amount or would be equivalent to- a reduction of the rent; and thereafter the rent ($150 per month) was paid as called for by the lease up to, and inclusive of, the month of September. It appears that Robert Mandel quit the-business at the expiration of the year 1908, and he testifies that he notified Pugh that the firm had been dissolved; and it may be that he did and that as between him and his-brother the business was thereafter conducted by the latter, and that he (Theodore) bought the beer and paid the rent; but for all that the testimony fails to show that either Pugh or Cunningham (for the lessor) ever agreed to release him from his obligation as lessee, or ever agreed to make any change in the lease, though it does show affirmatively that neither of them was author *317 ized to bind tbe lessor by any such agreement, even if they had assumed to make it. The keys of the building were sent to plaintiff in October, 1909, and were rejected, but no rent was thereafter paid by defendants, nor was any rent otherwise collected by plaintiff.
The judge a quo gave judgment for plaintiff on April 9, 1910, executory at once fox the whole amount of the rent, condemning the defendants in solido, and against Theodore Mandel for $211, as the amount due by him for beer and whisky.
Opinion.
[1] As defendants might have used the leased premises, and did use them for other purposes than the selling of liquor, the prohibition against such selling as the result of the action of the people of the parish did not affect the rights and obligations of the parties to the lease. Abadie v. Berges, 41 La. Ann. 281, 6 South. 529; Joseph Schlitz Brew. Co. v. Nielsen, 8 L. R. A. (N. S.) 495, note. [2] What defendants might have been entitled to do in consequence of the damage done to the leased premises by the fire is immaterial, since what they did was to accept $80 as compensation for any loss that they may have sustained, and continued their occupancy of the premises. Upon the questions of the abrogation of the lease and the making of a new contract with Theodore Mandel, thereby eliminating and releasing Robert Mandel, defendants’ allegations are not sustained by the proof, and it is affirmatively shown that the party or parties with whom such understanding is said to have been made were not authorized to bind plaintiff in that way, and did not profess to do so.
[3] Commercial partners are bound in solido for all contracts within the scope and for the purposes of the business in which they are engaged, and among the first essentials to a commercial business is the securing of a place in which to conduct it. It is-true that a commercial firm as such cannot acquire real estate, [5] because the law defines-commercial partnerships to be such as are formed for the buying and selling of personal property and the carrying of such property for hire by ships or other vessels. O. C. art. 2825. But that does prevent such a partnership from leasing premises needed for the-conduct of its business, and thereby binding its members as in other competent contracts.
[4] In Perrett v. Dupre, 8 Rob. 55, defendants, commercial partners, had been condemned jointly on a contract of lease,, and at the instance of the appellees the judgment was amended in this court, so as to-condemn them in solido. The case of Hollingsworth v. Atkins Bros., 46 La. Ann. 515, 15 South. 77, was one in which it was sought, to make commercial partners liable in solido for the rent of a plantation, and the language used by the court was broader than the occasion required, and should be confined in its application to the question decided. The judgment appealed from was erroneous-in being so rendered as to be executory for the whole amount due and to become due; but, as the whole amount is now due, the error may be said to have corrected itself, though the defendants are entitled to the-costs of the appeal. The evidence shows that the amount due by Theodore Mandel for beer and whisky is $211.25, whereas he has been condemned for $211. On the other-hand, he is entitled to a credit of $19, which he has not received, so that the item of $211 (as allowed) should be reduced to $192.25.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be-amended by reducing the item of $211 for which Theodore Mandel is separately condemned to $192.25, and as amended affirmed,, plaintiff to pay the costs of the appeal.