NELL E. CONKLIN, Appellee, v. S. SILVER et al., Appellants.

LANDLORD AND TENANT: Termination of Lease by Statutory Prohibition of Business. A lessee is not absolved from the payment of rent under an inseverable lease because of the passage, subsequent to the execution of the lease, of a law which, while rendering the lessee's business less profitable, does not wholly deprive him of the beneficial enjoyment of the property.

CONTRACTS: Illegal Lease—Storage of Inflammable Junk. A lease of premises for the "iron, metal, and rag business" is not rendered illegal by a subsequently enacted statute prohibiting the storing within fire limits of inflammable junk.

EVIDENCE: Parol as Affecting Writing—Parol Explanation of Unambiguous Lease. Parol evidence of what was said by a lessee, at the time of the execution of a written lease, as to his *purpose* in leasing, and as to the *use* to which the premises would be put, is inadmissible, when the lease definitely specifies such purpose and use.

*Appeal from Polk District Court.—*LAWRENCE DEGRAFF, Judge.

NOVEMBER 15, 1919.

ACTION at law for the recovery of rent pursuant to the terms of a written lease. There was a directed verdict and judgment for the plaintiff, and defendants appeal.—*Affirmed.*

*James C. Hume,* for appellants.

*John L. Gillespie,* for appellee.

WEAVER, J.—The plaintiff is the owner of Lot 6, Block 2, in Scott and Dean's Addition to the city of Des Moines. On a portion of the lot, and as a part of said property, is a frame building, constructed and formerly occupied as a dwelling. This is the only building on the lot, and is within the fire limits established by the city. On May 22, 1917, plaintiff, by an agent, let the property by written lease to the defendants, for the term of one year from June 1, 1917. By the terms of the lease, the lessor was to make certain specified changes and repairs in the building, to fit it for the lessees' use, and the lessees, on their part, undertook "to only use the premises for iron, metal, and rag business," and to pay a rental of $60 on the first day of each month. The lessees further bound themselves "not to engage in or permit any unlawful business on the premises, nor to permit the premises to be occupied for any business deemed extra hazardous on account of fire." The lessees took possession of the leased premises, and paid all the monthly installments of rent up to and including the month of October, 1917, when they abandoned the premises and notified the lessor of their surrender or offer to surrender the lease, because of matters hereinafter

1. LANDLORD AND TENANT: termination of lease by statutory prohibition of business.

related. From the date last mentioned, lessees have paid no rent, and plaintiff in this action demands a recovery of the unpaid monthly installments for the rental year.

The reason for defendants' abandonment of the lease, and the ground upon which they deny liability in this action, are as follows: On July 4, 1917, and when the lessees had been in possession about one month, a statute enacted by the legislature, Chapter 184, Acts of the Thirty-seventh General Assembly, became effective, providing that:

"The depositing or storing of inflammable junk, such as old rags, rope, cordage, rubber, bones and paper, by dealers in such articles within the fire limits of any city, unless it be in a building of fireproof construction, is a public nuisance and may be abated and punished as such."

The defendants say that, the leased premises being within the fire limits of the city, and the building not being of fireproof construction, the effect of said statute is to prohibit and destroy their rag business, for which the property was leased; that the principal business of the lessees there carried on was the buying, assorting, baling, storing, and shipping of rags; and that the statute which makes such business unlawful, and exposes the defendants to criminal prosecution, deprives them of any substantial or beneficial use of the property, thus releasing them from further obligation to pay rent.

I. Although the defendants, as witnesses, emphasize the use to which they put the leased premises as "the rag business," the testimony shows they also dealt largely in junk metals. It is shown that the upper story of the building was very largely, if not entirely, given over to the handling and sorting of rags, which were thrown down chutes made for that purpose, into bins or boxes below, where they were baled for shipment. Upon the lot outside of the house were stored, in large heaps, quantities of old iron and other metals, while brass, lead, copper, and

other of the more valuable kinds of junk were stored in the building. There was a spur or side track from one of the railroads laid to or across the rear of the lot, which facilitated the receipt and shipment of the wares in which the defendants dealt. Altogether, we are satisfied that, while the operation of the statute mentioned served to narrow or restrict, to some extent, the scope of the business of the lessees, we think the evidence is insufficient to sustain a finding that it deprives them of the beneficial use of the leased property; and, as the defense is an affirmative one, the burden of establishing which is upon the party pleading it, the trial court did not err in refusing to submit it to the verdict of the jury.

In the case of *McCullough R. Co. v. Laemmle Film Service,* 181 Iowa 594, on which appellant largely relies, the tenant was held released from his obligation to pay rent because, by ordinance, the city had prohibited the keeping, storing, or handling of motion picture films in the building leased by him, and, as the lease limited the lessee's use of the building to the keeping of a film exchange and theater supplies, the enactment of the ordinance left him no beneficial use in the property. It was also held that the term "theater supplies" had reference only to supplies incident to the operation of film picture exhibitions, and that the prohibition of the conduct of a film exchange left the right or privilege of handling "theater supplies" in the building a thing without substantial value.

In this case, however, it seems clear that the right to buy, sell, store, and ship junk metals of all kinds, not only in the building but upon the entire lot, is not, in any sense, a mere incident of the rag business, and that a loss of the privilege of using the building for the handling of rags does not deprive the lessees of the beneficial enjoyment of the property for the other specified uses. It may possibly render the use less valuable or less profitable, but there is no

rule or principle of law which makes that fact a matter of defense or of counterclaim in an action upon the lease.

II.   Counsel cites authorities upon the proposition that contracts to do an illegal act are void.   The principle referred to is sound, but it can have no application here; for this contract was not unlawful when made, nor was it rendered unlawful by the statute which came into effect a month later.

2. CONTRACTS:
   illegal lease:
   storage of in-
   flammable junk.

It was not then, nor is it now, unlawful to lease property to be used in the "iron, metal, and rag business."   What the new statute does prohibit is not the "rag business," but the depositing or storing of old rags by "dealers in such articles" within the city fire limits, except in a fireproof building.   There seems to be no legitimate reason for holding that a party may not be engaged in a lawful "rag business," even in a frame building, within the fire limits, and he will not offend against the statute until he uses such place for the deposit or storage of rags.

It is an elementary rule that, if a contract is fairly susceptible of an interpretation or construction which is lawful, it will be conclusively presumed that such was the intention of the parties, rather than an agreement for something which is unlawful.   Tested by this rule, the lease is not open to the objection of illegality, and we need take no time to discuss or consider what would have been the rights or remedies of the respective parties, were the allegation of illegality sustainable.

III.   The same principle renders unnecessary any discussion of the severable or inseverable character of the contract.   Defendants' contention that it is inseverable may be conceded.   It is one lease of one entire piece of property for one entire consideration.   The plaintiff thereby leases her property for a stated term, for a stated rental, and for use in a described business which is not illegal.   If the business be of a nature which is affected unfavorably by a

subsequently enacted valid police regulation, it is a misfortune which the lessee must bear, so long, at least, as the beneficial use and enjoyment of the leasehold is not wholly destroyed. Even if wholly destroyed, the lessee is released from his obligation, not because the contract is unlawful, but because, by an act of legislative power, the exercise by the lessee of his contract rights is forbidden. In other words, a lease which is lawful when made does not become unlawful by a subsequent change in the law, but the change of law may, under some circumstances (such, for example, as this court had to deal with in *McCullough v. Laemmle,* supra), destroy or annul the contract obligation. This case does not, in our judgment, fall within the exceptional class. See *Shreveport I. & B. Co. v. Mandel Bros.,* 128 La. 314 (54 So. 831) ; *Hecht v. Acme Coal Co.,* (Wyo.) 34 L. R. A. (N. S.) 773.

IV. Error is assigned upon the ruling of the trial court excluding the testimony of the defendants concerning what they said to plaintiff's agent, in negotiating for the lease, concerning the purpose for which they were leasing the building and the use they proposed to make of the property.

3. EVIDENCE: parol as affecting writing: parol explanation of unambiguous lease.

There is no error in this ruling. Where the written contract is obscure or ambiguous, or contains technical words or terms not in common use, testimony as to what was said by the parties in negotiation is often admissible, to make the situation and the intent of the parties clear to the jury; but there is nothing here to call for such aids. The language of the writing is plain and intelligible, and neither party can be heard to add anything thereto. Nor was there any error in refusing to permit the defendants to show what they had expended in "fixing up the building." This was not relevant to any issue on trial, and was a collateral matter which

could only tend to confuse and distract the attention of the jurors from the real question before them.

No reversible error is shown, and the judgment of the district court is—*Affirmed.*

LADD, C. J., GAYNOR and STEVENS, JJ., concur.