No. 2733

Second Circuit

————

HARDOMAN v. GLASSELL-WILSON CO., INC., ET AL.

————

(November 6, 1926.  Opinion and Decree.)
(December 11, 1926.  Rehearing Refused.)

————

(*Syllabus by the Editor*)

1. **Louisiana Digest—Master and Servant —Par. 160 (a), 160 (j).**

Under Section 28 of the Workmen's Compensation Act, No. 20 of 1914, the burden of proof is on the defendant to show that the injured employee, suing for compensation, deliberately failed to use adequate guard or protection against accidents provided for him.

2. **Louisiana Digest—Master and Servant —Par. 154.**

Under Section 6 of the Workmen's Compensation Act, No. 20 of 1914, both the contractor and the sub-contractor are liable for the payment of compensation to an injured employee.

3. **Louisiana Digest—Master and Servant —Par. 159.**

Where the proof clearly shows that the injured employee was unable to work at the time of the trial, but that his disability is temporary, there being no way of estimating how long his disability will continue, the court will give judgment under section 8, subsection 1 (a) of Act 20 of 1914 as amended, for compensation during the period of disability not exceeding three hundred weeks.

(The recent amendment of section 8 of Act 20 of 1914 is Act 85 of 1926.  Editor's note.)

Appeal from the First Judicial District Court of Louisiana, parish of Caddo. Hon. J. H. Stephens, Judge.

Action by Thomas J. Hardoman against Glassell-Wilson Co., Inc., et al.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Julius T. Long, of Shreveport, attorney for plaintiff, appellee.

J. Fair Hardin, Alex F. Smith, of Shreveport, attorneys for defendants, appellants.

ODOM, J.  Plaintiff brings this suit under the Workmen's Compensation Act to recover compensation at $20.00 per week for 400 weeks for alleged permanent

total disability caused by an injury which he received while working for defendants on December 18, 1925.

The case was tried on February 26, 1926, and resulted in a judgment for plaintiff against defendants for $20.00 per week for not over 300 weeks. There was also judgment in favor of the Glassell-Wilson Company, Inc., the principal contractor, against John Robinson, the sub-contractor, for the same amount. Both defendants have appealed.

## OPINION.

The Southwestern Gas & Electric Company contracted with the Glassell-Wilson Company, Inc., one of the defendants, to make extensive alterations in its plant at Arsenal Hill. The Glassell-Wilson Company, Inc., sublet the steel work to John Robinson, the other defendant. The plaintiff was employed by John Robinson, the sub-contractor, at a daily wage of $9.00. Robinson, of course, was to pay plaintiff his wages. Both of the defendants deny liability on the ground that plaintiff—

"* * * deliberately failed to use an adequate guard or protection against accident provided for him."

See Section 28 of Act 20 of 1914.

It is contended that there was a ladder or ladders in the building which could have been used by the plaintiff in climbing up the wall instead of his climbing up on the window sash as he did. The window sash was insecurely fastened and gave way, causing him to fall to the floor.

Paragraph 2 of section 28 of the act provides:

"That in order for the employer to be relieved of the payment of compensation under this section the burden of proof

shall be upon him to establish the facts relied upon."

Defendants have failed to discharge that burden in this case. The plaintiff was not furnished a ladder. It is true that there were ladders in the buildings, but they were not furnished for plaintiff to use, and there was no suggestion by the foreman or any one else that he use them. The testimony shows that plaintiff went about his work just as other laborers did. It would, no doubt, have been safer for the plaintiff to have used a ladder, but there is no testimony that the ladders were furnished as a protection against accidents.

The Glassell-Wilson Company, Inc., one of the defendants, contends that it is not liable for the reason that John Robinson, the other defendant, was its sub-contractor and employed plaintiff and was to pay his wages. But the Glassell-Wilson Company, Inc., is liable under section 6 of the act which specifically provides that in such cases the principal contractor is liable to the employee of the sub-contractor. Under paragraph 4 of section 6 of the act, where the principal contractor is sued by the employee of the sub-contractor he may call the sub-contractor into the suit, and under paragraph 2 of said section 6 it is entitled to judgment against such sub-contractor for whatever amount the principal is condemned to pay the employee.

In this case plaintiff brought suit against both the principal contractor and the sub-contractor. The principal contractor, in answer, asked that in case judgment was rendered against it in favor of the plaintiff then that it have like judgment against its sub-contractor, and judgment was awarded accordingly. We see no error in the court's ruling on that point.

As to plaintiff's injuries and the extent thereof, the testimony shows that while

plaintiff was performing his duties as an employee of Robinson he fell from an upper window to the concrete floor a distance estimated to be from twenty-five to thirty feet. His head and back struck the concrete floor. This was about 3:30 o'clock in the afternoon. He was picked up and carried to a sanitarium in an unconscious condition and remained in that condition until some time during the night.

Doctor G. H. Cassity, who attended the patient at the sanitarium, gave the following testimony as to the injuries which he found.

He said, in substance, that the patient appeared to be suffering from considerable shock, was in a low state of vitality, had low pulse, complained of pain over the right lower lumbar region and the right foot, and pain in the right side; that he observed a large red spot about the eighth rib on the right side; that there was a bruise eight inches long and four and a half inches wide on the posterior surface of the right side and a bruised place on the right foot. He further stated that as the patient complained of pain in the back, he was carried to the x-ray room where Doctor Barrow made an x-ray of the lower portion of the spine. The x-ray was not very satisfactory, as they had no time to prepare the patient for it. The x-ray, however, showed a fracture of the second, third, fourth and eighth lumbar vertabrae. He also made an x-ray of the head, which showed no fracture. He said he also found: "fracture of the third, and fourth right spine transverse process".

The doctors strapped the patient with adhesive tapes and quieted him with hypodermics. For two or three days the patient expectorated blood and passed blood from the bowels. He kept the patient in the sanitarium for twenty-two days, when he sent him home and put him to bed and advised him to stay there, and not to take exercise. Ten days later the patient went to his office, complaining of deep pains in the chest and soreness and stiffness over the right lumbar region and right foot and of headaches.

Further referring to the x-ray, the doctor said it also appeared as if there had been a slight displacement or rotation of the fifth lumbar vertabra or lobe. He said that said fracture might cause some pressure on the lower portion of the spinal cord. He found that the reflexes of the right knee joint are tardy but could be lifted, and he said—

'Reflexes of the lower limbs are slow and also in the upper arm."

He testified that plaintiff was disabled on the date of the trial and that he could not say when he would recover.

Doctor Sanderson testified that he examined plaintiff about a week before the trial and that plaintiff complained of pains in the back, soreness in the chest, numbness in the legs, headaches, some high disturbment and general nervousness, and he recommended plaintiff rest.

Doctor Crain examined plaintiff on February 17th. The patient, he said, showed no outward signs of injury but he found some tenderness in the lower part of the back; his pulse are rapid, 105, but the heart and lungs are normal; the posterior reflex is diminished in the left knee and absent in the right. He does not think there is any pressure on the spinal cord. He thinks plaintiff still has some trouble with his back but the main trouble, he says, is hysteria and he thinks there is cause therefor. He thinks the plaintiff should have more rest and treatment and will finally recover.

Doctor Murphy examined plaintiff and found evidence of an old gunshot wound in the neck and also a fracture of the right transverse process, the second, third and fourth lumbar vertebrae and some local bone produced over the base of the right transverse of the fifth vertebra showing an injury in that locality. He expresses no opinion as to his present disability.

Doctor Abramson found about the same condition as to reflexes, fractures, etc., as did the other physicians. In his opinion plaintiff needs rest and should recover in three months from the date of the trial.

Doctor Ragan testified that plaintiff is suffering from "traumatic hysteria" and should recover in two or three months.

As is usual in such cases, the physicians disagree as to the extent of the disability, but all who testified on that point agree that he was disabled at the time of the trial; and while some think he should recover with rest and treatment within two or three months others think there will be no further improvement and that he is permanently disabled.

Plaintiff says he is unable to work, and there is no question but that is true.

The plaintiff unquestionably received a very severe injury. Some of the physicians say it is remarkable that he was not killed. At the time of the trial he was suffering total disability, which we think is temporary, but we cannot fix a definite period over which he should receive compensation.

Inasmuch as the plaintiff received a serious injury and was at the time of the trial suffering total disability, and inasmuch as it is reasonable to assume from all the testimony that he will ultimately recover, and there being no way of estimating how long his disability will continue, judgment awarding him compensation at $20.00 per week for not exceeding three hundred weeks is proper under clause (a) of subsection 1 of section 8 of Act 20 of 1914 as amended by Act 216 of 1924.

Chandler vs. Oil Fields Gas Co., 2 La. App. 778.

O'Donnell vs. Fortuna Oil Co., 2 La. App. 462.

Price vs. Gilliland Oil Co., 3 La. App. 175.

King vs. McClanahan, 3 La. App. 117.

Scott vs. Standard Pipe Line Co., 3 La. App 77.

For the reasons assigned, the judgment appealed from is affirmed with costs.