**HATCH v. KILPATRICK et al.**

No. 4258.

Court of Appeal of Louisiana. Second Circuit.

May 20, 1932.

Hudson, Potts, Bernstein & Sholars, of Monroe, for appellants.

Foster, Hall, Barret & Smith, of Shreveport, for appellee.

## McGREGOR, J.

This is a suit in which the plaintiff, a widow, seeks to recover damages from the defendants on account of the death of her husband, W. M. Hatch, under the Workmen's Compensation Law.

In her petition the plaintiff alleges that L. L. Kilpatrick individually, and the partnership of Kilpatrick & Haskins, composed of L. L. Kilpatrick and Phil H. Haskins, are indebted in solido to her in the sum of $5,-850, payable at the rate of $19.50 per week for a period of 300 weeks, with interest as provided by law. She alleges that on October 13, 1929, and for several months prior thereto, her husband was in the employ of the defendants, earning wages at the rate of $60 per week, and that she was living with him and wholly dependent upon him.

The business or occupation of the defendants was described as being the operation, maintenance, and repair of automobiles, engines, and machinery, and the operation of an aeroplane for hire for the carrying of persons and personal property; the operation of the aeroplane including the operation, maintenance, and repair of the engine and machinery in connection therewith. After alleging the details and general nature of her husband's duties, she then alleged that on October 13, 1929, while acting within the scope and course of his employment, he was instantly killed in an accident which arose out of and was incidental to his employment; that at the time of the accident he was piloting an aeroplane for the defendants on a regular commercial flight for the carrying of passengers; that the flight was ordered to be made by the defendants; that shortly after the plane started upon its flight, flames suddenly enveloped it so that it fell immediately to the ground, with the result that her husband was instantly killed.

Defendants filed an answer, which was subsequently amended. Then, over a year later, on the day that the case was taken up for trial, still another supplemental answer was filed. This answer set up different lines of defense and for that reason the plaintiff objected to its being allowed, and filed. The court, however, permitted it to be filed and admitted testimony under it over the objection and vigorous protest of the plaintiff.

Taking the original answer and the two amendments thereto, the defense is about as follows: That during the month of June, 1929, the deceased, W. M. Hatch, was employed by the partnership of Kilpatrick & Haskins as an instructor and aeroplane operator for the sole purpose of teaching the said L. L. Kilpatrick and Phil H. Haskins to fly and acquire such hours of flying time necessary to become licensed pilots, and that the compensation for said service was to be the sum of $40 per week. The plane used for this purpose was bought and owned by Kilpatrick & Haskins. That by and on September 7, 1929, the said Kilpatrick and Haskins had learned to fly and the contract with Hatch was terminated and a new contract of hiring was entered into by and between the said L. L. Kilpatrick and W. M. Hatch, with which Phil Haskins had no connection so far as being obligated to pay any portion of the salary. Kilpatrick was in the business of selling automobiles, and the plane continued to be owned by the partnership of Kilpatrick & Haskins. That under the terms of this new contract with Kilpatrick, the duties of Hatch were those of an automobile salesman and the compensation for his personal service was the same as before, or

$40 per week. That since Kilpatrick & Haskins still owned the plane, and since they and Hatch were still interested in increasing their flying hours, it was stipulated in the contract that Hatch should continue to take care of the plane and assist them in flying, all without compensation, except that he should have the privilege of using the plane for himself and his friends. It is then alleged that on the occasion of the death of the said Hatch he had taken two of his friends, without charge, on a joy ride, and that the defendants had no connection with the flight, and that it was not taken by the said Hatch in the course of any employment by any of the defendants. On the issues as thus joined, the case went to trial and there was judgment in favor of the plaintiff for the sum of $13 per week for a period of 300 weeks, against L. L. Kilpatrick and Phil H. Haskins as a partnership, and against the individual partners in solido, and against L. L. Kilpatrick individually as a joint employer. In this judgment no interest was allowed and no date was fixed when the payment should begin.

The defendants appealed, and the plaintiff has answered and prays that the judgment be amended by fixing the date when the payments should begin and by allowing 5 per cent. on all past due payments, as provided by law.

### Opinion.

It is both admitted and conclusively proved that during the month of June, 1929, L. L. Kilpatrick and Phil H. Haskins bought an aeroplane in the city of Shreveport, after it had been examined and approved by W. M. Hatch. Hatch was then employed by the partnership of Kilpatrick & Haskins to fly the plane to Lake Providence, to take care of it mechanically, to teach them to fly, and to carry passengers for profit. An airport was established and maintained by the partnership with the idea that it would become self-sustaining. The expense was to be borne equally by the two partners in case the revenues from the business should be insufficient. The venture was a failure and a disappointment from a business standpoint. The partners had to advance money to keep it going, and Haskins soon grew tired and moved to terminate the arrangements. Both Kilpatrick and Haskins continued to own the plane and decided to retain the services of Hatch, even though the venture was a losing game. So, on September 7, 1929, Kilpatrick, who was engaged in the automobile business, agreed to use Hatch as a salesman and to assume the full payment of his wages of $40 per week, with the proviso that Hatch would continue to take care of the plane and assist the owners in flying as before and in carrying passengers for hire whenever desired.

It is the contention of the defendants that subsequent to the so-called new arrangement on September 7, 1929, the aeroplane was operated for the joint benefit and pleasure of Hatch, Kilpatrick, and Haskins, and that any moneys received from passengers that were taken for rides went to defray the expense of the machine, and that Hatch received no compensation for his services except whatever pleasure he may have derived from the operation of the plane.

On Sunday, October 13, 1929, Hatch, according to custom, took the plane out and made as many as four successful trips. Two young boys desired a ride and climbed into the ship, and in a few minutes Hatch took off with them with the same confidence as he had done on other occasions. From some unknown cause the plane soon became enveloped in flames and crashed to the ground, killing Hatch and the two boys instantly. It is the contention of the defendants that these two boys were friends of Hatch and that he took them up for a free joy ride on his own responsibility, and that, therefore, the defendants were in no way liable for his death. There is no testimony that the boys were friends or even acquaintances of Hatch. On the contrary, notwithstanding the denial of Haskins, one of the defendants and owners of the plane, it is proved to our entire satisfaction that Haskins was present on the occasion of this fatal ascent and ride; that he assisted in preparing the plane for the flight; that the boys paid him the usual fare of $2.50 each for the trip; that he took their hats for them and buckled them in the plane as is the usual custom. Other flights had been made on that same afternoon, and the usual fares were paid. Under his contract of September 7, Hatch was required to be present on this occasion, and we are sure that if he had refused to make the flight he would have lost his employment as automobile salesman. So that, under these circumstances, the irresistible conclusion is that he (Hatch) was performing service for Kilpatrick & Haskins in the regular scope of his employment, as provided in his contract with Kilpatrick.

Defendants contend that Hatch's only employment was that of automobile salesman; that his connection with the plane after September 7 was as much for his own benefit and pleasure as for any one else's. As a matter of fact, Hatch could see no difference in his employment after September 7, except that he had some additional duties and did not devote as much time to the airport and its operation as he had done before. He continued to receive the same weekly wages of $40 from Kilpatrick just as he had always done, for before September 7 Kilpatrick had advanced the wages and charged half of it to his partner. After September 7, he continued to pay it as usual, but charged it all to his own business. But in doing this, he required

Hatch to render service in connection with the airport and the aeroplane as formerly, whenever he or Haskins required it. It appears that these services were called for on Saturdays and Sundays, for those were the days when the public could take rides and pay for them. Hatch was just as much in the employment and subject to the orders and control of the partnership of Kilpatrick & Haskins after September 7 as he was before that date. the only difference being that as between Kilpatrick and Haskins the latter was not obligated to pay any portion of the salary.

The trial judge has assisted us very materially by handing down an able written opinion, in which he very aptly describes the dual employment of Hatch as follows:

"It will be thus seen that Hatch had two duties to perform for the defendants.

"First: To keep the plane in shape, get it ready for the use of these gentlemen, when they wished to use it, and to take passengers up for hire, for the benefit of his, shall we say employees, and all of this without pay, except such benefit and knowledge as he might derive from such hazardous employment.

"Second. To sell autos for the defendant L. L. Kilpatrick for which he was paid forty dollars a week and ten dollars for the use of his car.

"Hatch seems never to have been relieved of his original duties in connection with the airplane, the time spent thereon being curtailed and applied to the auto business. The evidence on this point is to the effect that defendant Haskins, feeling the stress of hard times, declined to put more money into the airplane venture, and that Kilpatrick, being able to use part of Hatch's time in his business, engaged him for such purpose, apparently with the general understanding among the three interested parties that Hatch should continue to render such services to the defendants, in connection with the airplane, as they should demand, and he continued to perform these duties as an operator of and instructor in the use of the plane to the time of his death. He was paid his entire salary by Kilpatrick, though directed in the use of the plane by either of the gentlemen, Kilpatrick or Haskins, as circumstances or their inclinations demanded.

"As the defendants exercised the authority, at will, to instruct the deceased regarding the use of the plane, participated in and supervised its use for passenger traffic, etc., we must conclude that it was handled as a partnership proposition, and that being used for commercial purposes, that the partnership was commercial. Civil Code, art. 2825; Shreveport Ice & Brewing Co. v. Mandel Bros., 128 La. 314, 54 So. 831.

"It is evident that the deceased had extremely important duties, that only one well versed in the use of a plane, could perform, in connection therewith. It is further evident that the sales of automobiles does not require special training. One might then conclude that it was only reasonable that the salary paid to Hatch was in remuneration for his general employment, and not alone for that part of it of an ordinary nature. Mr. Kilpatrick said he assumed the payment of all of this salary. This gentleman was interested in the plane, as a part owner thereof and while not questioning his evidence, as to the application of the salary of Hatch, and that he paid it all, it must not be overlooked that he was paying part of the salary of Hatch when he was engaged in the operation of the plane alone, and it is easily understood how he might have found it profitable to take on the deceased, as a part time salesman, for the sum heretofore paid him, in the airplane business, by his partner Haskins.

"The pleadings and the evidence, in this case, lead me to the conclusion that Hatch was never discharged by the defendants, or released from his duties in connection with the plane, and hence that he continued to work for the partnership. That part of his time was devoted to the business of defendant Kilpatrick alone, and that said Kilpatrick assumed the payment of all his salary."

█ █ It is an undisputed fact that both the employments of the deceased were hazardous occupations. The law governing the case is section 32, Act No. 20 of 1914, as amended (Workmen's Compensation Law). If A works for B and C in two hazardous occupations and receives an injury while performing a duty for either employer, within the scope of his employment, he is entitled to compensation to be paid by the two employers in the proportion which the wages paid by each bears to the entire wages. If for any reason whatever B pays all the wages and procures the services of A for C without charge to C, then, in case of injury received in either employment, B will be condemned to pay the entire compensation provided by law.

█ So, in this case, up to September 7, 1929, the deceased, plaintiff's husband, was employed by the partnership of Kilpatrick & Haskins. If he had received an injury or had been killed during the course of that employment, judgment for compensation would have been against the partnership and individual members thereof in solido. But after September 7, he was employed jointly by L. L. Kilpatrick and the partnership of Kilpatrick & Haskins, while all the wages were paid by Kilpatrick. It is clear, therefore, that judgment should be for the entire compensation against L. L. Kilpatrick. There is no basis to fix any portion of this liability against the partnership or either of the individual members thereof, as such.

It is also clear that the omission of interest and the fixing of a time when the compensation should begin was a matter of pure inadvertence, and the judgment will be amended accordingly.

For the reasons assigned, it is hereby ordered, adjudged, and decreed that the judgment appealed from be amended so as to read as follows: That the plaintiff, Mrs. Marietta Hatch, have and recover judgment against the defendant L. L. Kilpatrick for the sum of $3,900, payable at the rate of $13 per week for a period of three hundred weeks, beginning October 18, 1929, with 5 per cent. interest on all past-due weekly installments from their respective maturities; it is further ordered that the defendant L. L. Kilpatrick pay all the costs of both courts, and as thus amended, the judgment is affirmed.