GLADNEY, Judge.
The Louisiana State Board of Health has appealed from a judgment awarding to claimant herein workmen’s compensation.
The facts in this case have been correctly and fully set forth in the written reasons for'judgment handed down by our brother below, and we adopt his findings for the purposes of this decision':
“Mrs. Velria Book claims compensation for herself and for the use and benefit of her minor children, Nadine, Barney, Shirley, James, Diana and Cecile Book, issue of her marriage with J. H. Book, for a period of three hundred weeks, and for medical, surgical and hospital services, and for burial expenses, under the Louisiana Workmen’s Compensation Act, on account of the death of her husband, J. H. Book, an employee of the Police Jury of Con-cordia Parish, Louisiana, and the'Louisiana State Board of Health, who died as a result of injuries he received in an automobile accident while employed and within the scope of his employment.
“This suit was consolidated with suit No. 6837, being the same petitioner as natural tutrix to her minor son, Barney Book, against the same defendants herein, wherein she claims compensation under the Workmen’s Compensation Act for disabilities incurred by the said Barney Book in the accident that resulted in the death of J. H. Book.
“Each of the defendants has denied that they were the employers of J. H. Book and Barney Book.
“The trial disclosed that J. H. Book and his son, Barney Book, were employed in the DDT house spraying program that was being carried on in Con- *153 cordia Parish, Louisiana, at the time of the accident and the resulting death to J. H. Book and the injury to Barney Book. J. H. Book was furnished a jeep car to move himself, his helper, spray and spraying equipment from house to house, and in the course of this employment in moving to another house to he sprayed, the jeep overturned and both J. H. Book and Barney Book were seriously injured. Both were taken to the Ferriday Hospital where J. H. Book died within a few hours.
“The death of J. H. Book as a result of the injuries he received in the accident which happened in the course of his employment, and his average weekly wage of Thirty-Five Dollars is not disputed, and the only question here is who was J. H. Book’s employer?
“The other facts appear to be as follows :
“A representative of the Louisiana State Board of Health appeared before a meeting of the Police Jury and requested that jury to appropriate the sum of $2,800.00 to be used in a DDT house spraying program in Concordia Parish; the appropriation of that amount was made and the minute entry simply stated that it was for the DDT program. Mr. Meng, the Secretary-Treasurer of the Police Jury was directed to turn that sum over to Mr. Dock F. Brown, an employee of the U. S. Public Health Service on loan to the Louisiana State Board of Health. Mr. Brown had the field supervision and control of the program in Concor-dia Parish. He refused the lump sum offered and told Mr. Meng that he, Brown, was not allowed to handle the money, but that the money was to be disbursed in accordance with the pay rolls submitted by Mr. Brown. The evidence further disclosed that Brown prepared and submitted the pay rolls to Mr. Meng, the Secretary-Treasurer of the Police Jury, who made and prepared the checks for each man on the pay roll and delivered the checks to Mr. Brown to be given to the men or to the men if they were in the Police Jury Office.
“Mr. Martin, the president of the Police Jury at the time when the appropriation was made, testified that the money was simply a contribution to the DDT program and that it did not matter to the Police Jury how the funds were to be used, whether for equipment, personnel or materials.
“Mr. Dock F. Brown testified that he was the assistant supervisor in charge of the program of DDT spraying in Concordia Parish and that his immediate- superior was Mr. Clyde E. Simmons, and that he and Simmons were under the supervision of Mr. Porter of the Louisiana State Board of Health; that he, Brown, had the sole authority to hire and fire the field men used in the program; that he determined the number of men to be employed, fixed the rate of pay, made up the pay rolls and had direct supervision and control of the men; that he hired J. H. Book at- an agreed wage, and authorized J. H. Book to hire a helper at a wage fixed by Brown; that Book hired his son, Barney Book, as his helper. The evidence further disclosed that the jeep car was the property of the U. S. Public Health Service but loaned to-the State Board of Plealth and in whose name the state license tag was issued. The spray and equipment were furnished to the Books by the State Board of Health.
“The evidence fails to disclose where at any time the Police Jury exercised any control or supervision over these men, and participated in the spraying program only to the extent of making the appropriation and disbursing the funds in accordance with the instructions of the Board of Health.
“For these reasons it is the opinion of this Court that J. H. Book and Barney Book were the employees of the Louisiana State Board of Health.”
In this Court appellant seriously urges that the trial court erred in concluding that J. H. Book and Barney Book were not employees of the Police Jury of Con- *154 cordia Parish. Particular reliance is had upon a certain letter offered in evidence reportedly written by W. V. Gamier, M. D., State Health Officer, on September 17, 1948, addressed to the Concordia Parish Police Jury, and containing the following excerpt:
“We believe that the cooperative DDT house spraying project -which was carried on in Concordia Parish the past two seasons has demonstrated the value of the project, and that you will desire that it be continued during the 1949 season — March 1 to July 1.
“During the 1948 season 2,806 houses were sprayed. The total cost of spraying these 2,806 houses in 1948 was approximately $13,594, of which' $1,-626 was contributed locally.
“Similar projects were carried on this year in seventeen (17) other parishes. The U. S. Public Health Service has advised that house spraying should be carried on during the 1949 season in nine (9) additional parishes, but the funds allocated for this work have been reduced. This will require that a considerable portion of the cost of spraying be borne by the parishes which desire the work to be continued.
“It has been found that, based on the total number of houses to be sprayed in the twenty-seven (27) parishes, Federal funds will be sufficient to provide all equipment, supplies, and general supervision, but that all field men (foremen and laborers) and small incidental expenses will have to be furnished by each parish.
“While in some parishes the parish’s share of the cost of operations during the 1948 season was somewhat less than $1.00 per house, we consider it necessary to request local participation to the. extent of $1.00 per house for the coming season in order to provide for increases in cost.
“Since it is presumed that the total number of available houses will be sprayed this coming 'season (which is approximately 2,800), the local contribution required from Concordia Parish will be $2,800.
“It is earnestly hoped that the Police Jury can provide the necessary funds without having to resort to house-to-house collection. Should it. be necessary to collect from individual occupants or owners, collections will be made only by the spray crew, and no commission will be paid them for collecting.”
The admissibility of this document into evidence was objected to by counsel for the Police Jury on the ground that it was not identified by Dr. Gamier or any one competent to show the letter was actually written by the Health Officer. Mr. A. B. Ritter testified he was the custodian of the records of the Louisiana State Board of Health from which the subject letter was extracted. Mr. Meng, Secretary of the Jolice Jury, admitted that a letter of such a nature had been received and was read to the Police Jury. In view of LSA-R.S. 44:1, which makes such a letter a public record, and LSA-R.S. 23:1317, a section of the Employers’ Liability Act providing, inter alia, the court shall not be bound by technical rules of evidence other than as qualified in said Act, we are of the opinion that the trial court properly admitted the letter for consideration in the trial.
The single question presented for our consideration requires the identification of the employer of Book. Counsel for Mrs. Velria Book argue that her husband and son were joint employees of both the Louisiana State Board of Health and Con-cordia Parish Police Jury. The Louisiana State Board of Health asserts that the Books were employees only of the Police Jury, and the latter contends the employment was by the Louisiana State Board of Health. We have reached the conclusion that J. H. Book and Barney Book were the employees of the Louisiana State Board of Health and not employees of the Con-cordia Parish Police Jury.
In problems such as the one confronting us, our courts have often cited as authoritative 35 American Jurisprudence, § 3, “Master and Servant”, pages 445-446, wherein the existence of the employee relationship is discussed as follows:
*155 “While it is said that at common law there are four elements which are considered upon the question whether the relationship of master and servant exists, — namely, the selection and engagement of the servant, the payment of wages, the power of dismissal, and the power of the control of the serv-1 ant’s conduct,- — -the really essential element of the relationship is the right of control — the right oí one person, the master, to order and control another, the servant, in the performance of work by the latter, and the right to direct the manner in which the work shall be done. 'It is, moreover, essential that the master shall have control and direction not only of the employment to which the contract relates, but also of all its details, and if these elements of control and direction are lacking, no relationship of master and servant exists. The test of the employer-employee relation is the right of the employer to exercise control of the details and method of performing the work. It is the element of control of the work that distinguishes the relationship of master and servant from the independent contractor relationship, for the most important test in determining, whether one employed to do a certain work is an independent contractor or a mere servant is the control over the work which is reserved to the employer.”
In Benoit v. Hunt Tool Company, 1951, 219 La. 380, 53 So.2d 137, Justice Hawthorne thoroughly explored the so-called “whose business” and the “control” tests, finding that these two tests were in reality one and the same, and his opinion concluded that the rule simply meant that at the time of the accident the employee was acting within the scope of and was performing the business of 'his general employer and was doing what his employment authorized him to do.
If we apply the foregoing rules to the facts as hereinabove determined, we must reach the conclusion that the Louisiana State Board of Health was regularly engaged in the business of control of communicable diseases and specifically engaged in the business of malaria control; that it exercised the exclusive right to hire and fire field personnel; that its employee, Brown, was borrowed from the United States Public Health Service, and Brown, in fact, fixed the wage scale of and made out the pay roll of the field personnel; that he determined how many men to place on the job and directed their duties, and thereby exercised complete and exclusive supervision and control of such work. The record indicates that the only action in connection with this project by the Police Jury of Con-cordia Parish was the appropriation of a sum of money and the disbursement of that money exactly as directed by Brown.
The contribution so made by the Police Jury may be likened to an appropriation by it for the Community Chest, Red Cross or any other agency, public or'private, engaged in their own field of endeavor. It is perfectly clear that in such instances the Police Jury would not and does not exercise any control or supervision over the employee engaged in such undertaking.
Counsel for Mrs. Book seriously contend that the Police Jury and the Louisiana State Board of Health were engaged in a joint enterprise and that both should be held responsible for compensation. In support of this argument they cite the cases of: Taylor v. Willett, La.App. Second Circuit, 1943, 14 So.2d 298; Robinson v. Younse Lumber Company, 8 La.App. 160; Hatch v. Kilpatrick, La.App. Second Circuit, 1932, 142 So. 202; Hardoman v. Glassell-Wilson Company, Inc., 5 La.App. 203. A consideration of these cases discloses that they are inapt.
In Hardoman v. Glassell-Wilson Company, -Inc., the court there held that defendant was liable under the provisions of the Act which specifically provides that in certain -cases the principal contractor is liable to the employee of the sub-contractor. In the instant case the relationship of contractor and sub-contractor between the Police Jury and the Louisiana State Board of Health did not exist. But, irrespective of this, by reason of the provisions of the Act, LSA-R..S. 23:1034, and 23 :1312, even in such an instance the Police Jury could *156 not be held Hable. LSA-Revised Statute 23:1034 expressly states that one employed by a contractor who has contracted with the State, or other political subdivision, shall not' be considered an employee of the State, or other political subdivision. In Robinson v. Younse Lumber Company, there was clearly a joint undertaking where J. R. Younse and T. R. Younse pooled their interests and services in order to cut and manufacture a tract of timber. In Hatch v. Kilpatrick, the employee was engaged in two undertakings and rendered service to two separate businesses, one of which paid his entire salary for both undertakings, Kilpatrick, the defendant, being an individual owner.in one business and a partner in the other. The Court held the employee was mainly in the service of the defendant, Kilpatrick, who paid his entire wages and that under the provisions of the Workmen's Compensation Act as then. in force, Acts 1914, No. 20 §§ 2, 32, as amended by Act No. 85 of 1926, compensation should be assessed in proportion to the wage liability of the respective employers. Taylor v. Willett, presents an instance of where there was a principal contractor and a subcontractor and obviously is inapplicable in view of LSA-R.S. 23:1034, referred to aboye.
Counsel for claimant rely particularly upon the case of Washington v. Sewerage and Water Board of New Orleans, La.App., 1938, 180 So. 199, for the purpose of imposing direct liability upon the Police Jury. We do not think this case appropriate for the reason that the defendant therein exercised considerable supervision and control over the undertaking involved. It had its assistant to the general foreman of the 'Sewerage Maintenance Department at the site of the work to see that the job was carried out in accordance with its plans and specifications. This agent described his job as that of inspector and he was in constant attendance upon the work being undertaken. In other words, he exercised on behalf of the defendant, a control over the manner in which the work was being accomplished. A number of laborers on the project testified that the representative of the Sewerage and Water Board was the real boss of the job and they were supposed to obey his instructions.
Our findings of fact negative any control or supervision over the Books by any representative of the Police Jury.
Finally, the contention is urged that the Books were employees of the Police Jury by virtue of being borrowed employees-of the Louisiana State Board of Health. The.borrowed employee doctrine has been recognized and received consideration in a number of cases in this state. However, we find that in such instances the court has simply determined in whose employ and under whose control the employee was at the time-of the accident. We have concluded that the Concordia Parish Police Jury exercised no control or supervision over the .Books and, therefore, we can find no occasion to consider that these employees were ever acting as such on behalf of the Concordia Parish Police Jury.
The awards for compensation for medical, surgical, and hospital services and burial expenses are not in dispute. The trial court correctly rendered judgment as follows:
“It is therefore, ordered, adjudged and decreed that there be judgment herein in favor of Mrs. Velria Book,, individually and for the use and benefit of her minor children, Nadine, Barney,. Shirley, James, Diana and Cecile Book,, and against the Louisiana State Board1 'of Plealth, in the full sum of Six Thousand Eight Hundred Twenty-Five ($6,-825.00) Dollars, payable at the rate of $22.75 per week beginning as of May 10, 1949, and continuing for a period' of three hundred (300) weeks with legal interest thereon on each installment or payment from the date the same was due until paid and all payments due or past due at the time of the final judgment to be immediately exigible; that there be further judgment herein for the sum of One Hundred Fifty-Six ($156.00) Dollars for medical, surgical and hospital services, and further judgement herein for the sum of Two •Hundred Fifty ($250.00) Dollars for burial expenses and for all cost of-these proceedings.
*157 ■ "It is further ordered that the suit against the Police Jury of Concordia Parish, Louisiana, he dismissed at plaintiff’s cost.”
The judgment appealed from is affirmed.
The defendant, the Louisiana State Board of Health, is taxed with cost of court reporter only, and plaintiff is taxed with all other costs.
KENNON, J., not participating.