The plaintiff, William H. Ohlhausen, brought this suit under the Louisiana Workmen's Compensation Act, Act No. 20 of 1914, as amended, against the defendants, Sternberg Dredging Company, his employer, and its compensation insurer, the Travelers Insurance Company, in solido, claiming total and permanent disability.
Defendants filed exceptions of no right. and no cause of action and exceptions to the jurisdiction. By consent of counsel for both parties these exceptions were referred to the merits. The defendants, specifically reiterating the exceptions, then answered denying that plaintiff was entitled to any compensation whatsoever.
Following a trial on the merits, the judge of the lower court, without specifically ruling on the exceptions, apparently overruled them by rendering judgment in favor of plaintiff as prayed for. The defendants have appealed.
Defendants, on appeal, have abandoned the exceptions to the jurisdiction and, in support of their exceptions of no right and no cause of action, contend that the Louisiana Compensation Act is not applicable because the injury did not occur in Louisiana and, because the contract of employment was not executed in Louisiana, and maintain that no recovery can be had under the Workmen's Compensation Act, if neither the harm occurred nor the contract of employment was made or to be primarily performed in this State.
The record reflects that in 1931, while living in Houston, Texas, plaintiff ascertained that the Sternberg Dredging Company was building a new dredge in Nashville, Tennessee. He proceeded to Nashville, where for a short time he worked for *Page 372 
the Nashville Bridge Company, which company constructed the dredge "Duplex" and, on August 10, 1931, was transferred to the payroll of the Sternberg Dredging Company.
A close examination of the evidence contained in the record indicates that plaintiff performed his work as leverman on the "Duplex" in many places. Upon the completion of the "Duplex" in Nashville, Tennessee, the dredge proceeded to Houston, Texas, in contemplation of work to be done in the Houston Ship Channel. The dredge remained in Houston for approximately one year. It then went to Galveston, Texas, where work was done in the Galveston Harbor during the latter part of 1932 or early part of 1933. The record is silent as to how long the dredge remained on this job or as to where it proceeded after completing it. The record does show that plaintiff was married in Houston, Texas, on March 12, 1935. The record further reflects that the "Duplex" next appeared in Louisiana, although there is no evidence as to when it first came to Louisiana or as to how long it remained in Louisiana. The plaintiff testified that the "Duplex" went from Louisiana to Panama City, Florida in 1936 or 1937, where it was engaged for a period of time in excess of a year. The "Duplex" then returned to Wax Lake, Louisiana, where it was engaged from the latter part of 1937 until November, 1941, when it was moved to Panama City, Florida. At this time plaintiff voluntarily left the employment while the "Duplex" was located in Panama City. After terminating this employment on November 2d 1941, he came to Louisiana and worked in this State for the Elmax Construction Company until the latter part of January, 1942, at which time he wrote to Captain Paulk, the Master of the "Duplex" and asked if he could have his old job back. Captain Paulk answered and informed plaintiff that if he came to Jacksonville, Florida, where the "Duplex" was then engaged, he could have his old job back. Plaintiff proceeded to Jacksonville and was there employed by Captain Paulk, on behalf of the Sternberg Dredging Company, as a leverman, the same position he had occupied prior to terminating his employment with that company in November of 1941. In August, 1942, the "Duplex" was moved to Brunswick, Georgia, where it stayed for thirty days and it was then returned to Florida. In October, 1942, the dredge was docked in Florida for repairs and, apparently in consequence thereof, plaintiff, in November or December of 1942, came to Louisiana to help construct another dredge for the defendant. Upon completion of the repairs for which the "Duplex" was docked, plaintiff returned to the dredge and, thereafter it was moved to Panama City, Florida, where it was engaged in dredging work in the intracoastal canal in January or February, 1943. This work was consummated during the months of July or August, 1943, and the "Duplex" went to Barataria, Louisiana. There is a dispute between plaintiff and Captain Paulk as to how long the "Duplex" was engaged in Louisiana at this time, plaintiff contending that it worked in Louisiana for about six months, while Captain Paulk testified that it was in Louisiana from September, 1943 to January, 1944. Thereafter the dredge was moved to Luna Landing, Arkansas, arriving there in February, 1944. Thereafter on or about March 1, 1944, plaintiff alleges that he received the injury, which forms the basis of this suit. The evidence further shows that plaintiff was discharged by Captain Paulk during the latter part of March, 1944.
The record reflects that the "Duplex", a self-propelled dredge, moved from State to State in completing various contracts for its owner, the Sternberg Dredging Company, and plaintiff, himself, enumerated the States in which he worked while employed on the "Duplex" to be Texas, Louisiana, Alabama, Georgia, Florida and Arkansas, although not in that categorical order.
As set forth hereinabove, defendants, on appeal, rely, in support of their exceptions of no right and no cause of action, solely on the contention that the Louisiana Compensation Act is not applicable because the injury did not occur in Louisiana and the contract of employment was not executed in Louisiana. It is conceded by the plaintiff *Page 373 
that the contract of employment was originally confected in Nashville, Tennessee and that plaintiff, after voluntarily leaving the employment of the Sternberg Dredging Company, was again employed by that Company in Jacksonville, Florida, and that the accident occurred in the State of Arkansas.
Thus the only question posed by virtue of the exceptions of no right and no cause of action is whether the Louisiana Workmen's Compensation law is applicable to the facts of this case.
Clearly the evidence adduced in the trial court conclusively indicates that the work performed by plaintiff, under both contracts of employment, was of a transient nature and required his presence in many States.
It is the plaintiff's contention that the Louisiana Compensation Act is applicable to plaintiff's injury because, at the time of plaintiff's employment, it was the intention of the parties that the contract of employment would be governed by the Louisiana Compensation Act and that Louisiana was the only State having sufficient interest in the result of the litigation to justify the application of the compensation statute.
As paradoxical as it may seem, both plaintiff and defendants principally rely on the following cases in support of their respective adverse contentions. McKane v. New Amsterdam Casualty Company, La. App., 199 So. 175; Hunt v. Magnolia Petroleum Company, La. App., 10 So.2d 109 and Williams v. Travelers Insurance Company of Hartford, Connecticut, La. App.,19 So.2d 586.
The pertinent facts in the McKane case were: The employer, Stein-Hall Manufacturing Company, Inc., was an Illinois corporation domiciled in Chicago. In 1913, McKane was employed, by verbal contract entered into in Chicago, to sell the employer's products anywhere in the United States. He remained employed in that capacity until 1925, when he was sent to Detroit, Michigan, to manage the branch office and he remained there until 1926, when he resigned to go into business for himself. In 1930, he was again employed by verbal contract in Chicago as a salesman to travel anywhere in the United States. He worked in that capacity, with Chicago as his headquarters, until 1935. In 1935, the employer opened a branch office in New Orleans and called him off the road to Chicago, and there offered him the position of manager of the New Orleans office. He was told that if, after a year in New Orleans, he wished to do so, he could remain there permanently. At the end of the year he decided to remain in New Orleans and the employer confirmed him as branch manager and paid the expenses of moving his household effects and family from Illinois to New Orleans. He purchased a home in New Orleans and maintained this City as his residence until his death in 1940. His territory was principally Arkansas, Louisiana and Mississippi, and he had authority to employ and discharge office help. He was required to travel over the territory which was in his jurisdiction. He was paid by check issued in Chicago, and he was required to keep in constant contact with the Chicago office. In 1940, while returning from Arkansas to New Orleans, he was killed in Louisiana.
The employer had secured a policy of compensation insurance with the New Amsterdam Casualty Company, the defendant, providing coverage protecting the company for injuries sustained by its Illinois employees. This policy was issued in Illinois, but, by endorsement, it was made to cover employees working in Louisiana, Michigan and Missouri, and the premium, insofar as McKane was concerned, was fixed at Louisiana rates.
McKane left a widow and an illegitimate child, who had been living with him and his wife. Shortly after his death, one Margaret Colbert filed suit in Illinois claiming compensation under the laws of that State on behalf of the illegitimate child, who was alleged to be her daughter and of whom McKane was alleged to be the father. Shortly thereafter, the employer filed suit in Illinois against the widow of McKane, seeking to fix the compensation due her under Illinois law. In *Page 374 
the meantime, Mrs. McKane filed suit in Louisiana for compensation under the Louisiana compensation statute.
Under these circumstances, we held that there was evidenced the mutual intent that McKane's employment should be controlled by the Louisiana compensation statute. We said [199 So. 182]: "We think, however, that with relation to the applicability of the Workmen's Compensation Law, the better rule is that the intention of the parties to the contract should be the determining factor. And, before resolving whether an employment contract is to be governed by the law of the place where it is made or by the law of the place where it is to be performed, the court should examine all of the facts and circumstances of the case with reference to the nature of the work to be done, the place of performance, the domicile of the parties, etc. — all with a view of discovering the true intent of the parties. If, after investigation, it appears that the parties have indicated, either expressly or tacitly, that their rights and obligations should be governed by the laws of the place of performance, then the court should not hesitate to apply that law to the case."
In our opinion, the philosophy expressed in the McKane case is sharply analogous to this case and, consequently there can be no recovery when the injury did not occur here, the contract of employment was not executed in this State, and the facts do not support the theory that it was the intention of the employer and employee that the said contract of employment should be governed by the laws of the State of Louisiana.
In Hunt v. Magnolia Petroleum Company, supra, the Court found the facts to be as follows:
"The plaintiff, Sullivan H. Hunt, a married man, residing with his wife at West-lake, Louisiana, was first employed by the defendant, Magnolia Petroleum Co., on August 2, 1937, and worked as an oil-field rough-neck in * * * the Cameron Meadows District in Louisiana. At the time of his first employment he was examined by Dr. R. G. Holcombe, the defendant company's examining physician at Lake Charles, Louisiana. He worked intermittently in Louisiana, but on one occasion was sent for a brief period to the Amelia oil-field in Texas, after which he again worked for the defendant in Louisiana.
"On February 16, 1939, as had been the case before when work was slack, he was laid off; but on that occasion, he withdrew from a voluntary annuity and insurance plan carried by the Magnolia Petroleum Co. for its employees, and cashed the benefits he was entitled to receive thereunder.
"Within a month from that date he was again contacted by an employee or representative of the defendant company out of its Lake Charles office and was advised that there was some work for him at Kermit, Texas. He reported at once to the Lake Charles office and was sent, or went himself, to the Iowa field office, at Iowa, Louisiana, where records of physical examinations in the Louisiana district were kept, but was unable to secure his record just then. He was instructed however to report to the 'tool-pusher' at Kermit, Texas, which he did, but before being put to work, had to submit to another physical examination which he passed. His wife went with him to Kermit, Texas, but they did not move their furniture there. He started to work on March 14, 1939, and worked continuously until May 25, 1939, on which day he sustained a severe accidental injury to his right leg."
The Court held that the contract between Hunt and his employer was a "Louisiana contract, and that being so, both parties were subject to the provisions of the Louisiana compensation statute."
In Williams v. Travelers Insurance Company of Hartford, Connecticut, supra, suit was brought by the widow of the decedent for compensation under the Louisiana Workmen's Compensation Law. Decedent was employed by Southern Pine Inspection Bureau and his duties required that he work temporarily at different times in different States of the Union. He was working in Illinois at the time of his *Page 375 
death. It was defendant's contention that the contract of employment was a South Carolina contract, because decedent had accepted the offer of employment over long distance telephone while in that State, and, therefore, plaintiff could not recover compensation in Louisiana. The Court said [19 So.2d 589]:
"The negotiations between them (decedent and his employer) started with the plaintiff's deceased husband's application for employment when he resided in this State. The Bureau maintained its principal office at New Orleans, in this State, notwithstanding the fact that it was engaged in business in every State east of the Rocky mountains. The application for employment was submitted to the New Orleans office and that is the only place where it ever was considered by Mr. Cahal, the assistant manager of the Bureau. It never was rejected but on the contrary, the deceased was always led to believe that eventually it would be accepted. Both parties understood that the employment would carry no permanent assignment to any particular State, just as it turned out after he actually was employed. It was more or less accidental that the decedent found himself in South Carolina when the culmination of all prior negotiations, which had actually never stopped, took place in the long distance telephone conversation he had with Mr. Cahal. We might well assume that he was the one who placed the call and closed the contract at that time and yet we could not hold that that one minor fact, compared to all that had transpired between them before, had the effect of making it a South Carolina contract. Moreover, Mr. Cahal testified that regardless of where their employees worked, their employment was finally approved in New Orleans and that the approval of that office had to be obtained before any nonresident contracts of employment were confected.
"Under the method by which it carried on its business all employees of the Bureau, such as decedent was, no matter in which State they worked, were paid their salaries and expenses out of the New Orleans office. * * * In his case it is shown that in the short period of his employment covering a bit more than a year, the decedent worked in South Carolina, New York, Mississippi and Illinois. It is shown, however, that what reports he made to his employer had to be made to the New Orleans office. Clearly therefore, in this case, the place of performance cannot be used as a determining factor in applying the law of the place of the contract. Considered as a fact, among the many others referred to, it adds weight to the conviction that the intention of the parties was to have their contract treated as a Louisiana contract, and as such to be governed, in relation to compensation insurance as well as in other matters, by the Louisiana law."
The Court in the Hunt and Williams cases followed the "intent theory" enunciated in the McKane case, and sought to ascertain all the facts and circumstances with a view of discovering the true intent of the parties and held that in each case the contract between the plaintiff and his employer was a Louisiana contract and that fact being so, both parties were subject to the provisions of the Louisiana Workmen's Compensation Act. The Court emphasized, in both cases that all employment relations were confined to Louisiana.
Counsel vigorously maintain that the plaintiff, in this case, was a resident of Louisiana at the time he resumed his employment with defendant in Florida. We, of course, appreciate the fact that the residence of the parties was taken into consideration in the three cases relied upon, however, we do not think that this factor is of any relative significance in this case, in view of the fact that we have weighed all of the various factors as tending to show the true intent of the parties. We believe the applicability of the Workmen's Compensation Act to any specific case is contingent upon the peculiar facts incident to the case under analysis. Therefore, the place of the contract, the place of employment and the place of the industry of the employer is, in our opinion, of prime importance. In the instant case, the original contract was confected in Nashville, *Page 376 
Tennessee, and either resumed or a new contract entered into in the State of Florida, and the injury occurred in the State of Arkansas.
The Sternberg Dredging Company was organized under the laws of Delaware with its principal office in St. Louis, Missouri, and while it had established two branch offices in Louisiana, to wit: New Orleans and Morgan City, the joint stipulation of counsel, submitted on the trial below, states that Captain Paulk had "full and complete authority and discretion from Sternberg Dredging Company to employ and discharge employees for Sternberg Dredging Company to work or working on the dredge Duplex; that Sternberg Dredging Company has never required or requested approval by any of its offices, and particularly by the Morgan City or New Orleans branch offices * * *" and "that, under this authority, Captain Paulk employed Mr. Ohlhausen in 1942, and no approval or clearance for the employment of Mr. Ohlhausen at that time was obtained from any office of Sternberg Dredging Company." In the McKane, Hunt and Williams cases an additional rationalization is manifested in connection with an old problem. All of these cases, in the final analysis, hold that the Louisiana Workmen's Compensation Act is applicable and is contingent upon the intent of the parties. Therefore, it is obvious that the courts must and will continue to examine, in detail, all of the factors which previously controlled their ultimate decisions, such as the place where the contract of employment was executed, the place where the employer's industry was located, the place where the employment was to be performed, the place where the injury occurred and the residence of the parties. Therefore, by invoking the "intent theory", the courts actually are adding an additional step to the process of rationalization which had, to some degree, previously occurred in the earlier cases, many of which have been cited by both counsel. It will be observed, without any significance in this case, however, that the residence of the parties ignored in earlier cases, is considered and evaluated in these later cases.
In applying the intent theory to the present case, we are of the opinion that it was never the mutual intention, either express or tacit, of the employer and employee that their respective rights and obligations should be governed by the Louisiana compensation act in the event of an injury and that the exceptions of no right and of no cause of action, taken by the defendants, should have been maintained by the court, a qua, consequently and for the reasons assigned the judgment appealed from is annulled, avoided and reversed and it is now ordered that there be judgment herein in favor of the defendants maintaining their exceptions of no right and of no cause of action, and dismissing plaintiff's suit at his cost.
Reversed.