REGAN, Judge.
Plaintiff, William H. Ohlhausen, instituted this suit under the Louisiana Workmen’s Compensation Act, LSA-RS 23:1021 et seq., against the defendants, Sternberg Dredging Company, his employer, and its compensation insurer, Travelers Insurance Company, in solido, claiming total and permanent disability, as a result of an alleged accident on March 1, 1944.
Defendants filed exceptions of no right or cause of action and an exception to the jurisdiction. By consent of counsel for all parties these exceptions were referred to the merits. Defendants specifically reiterating the exceptions, then answered denying that plaintiff suffered an accident on March 1, 1944, while in the employ of the Sternberg Dredging Company and averring that the back injury complained of by plaintiff did not directly or indirectly arise out of his employment.
Following a trial on the merits, the court, a qua, rendered judgment in favor of plaintiff as prayed for. Defendants appealed and this court reversed the judgment and held that the Louisiana Workmen’s Compensation Act was inapplicable and maintained defendants’ exceptions of no right or cause of action. La.App., 42 So.2d 371. The Supreme Court granted a writ of cer-tiorari and, in an opinion dated January 9, 1951, 218 La. 677, 50 So.2d 803, reversed the judgment of this court, holding that the Louisiana Workmen’s Compensation Act did apply and remanded the case to us for a consideration of the merits.
The record reveals that the plaintiff wa« employed by the Sternberg Dredging Company as a levertnan on its dredge “Duplex”. Plaintiff testified that while the dredge was operating at Luna Lake, Lake Village, Arkansas, on or about March 1, 1944, he, together with two fellow employees, Harry Hebert and Pete Rivoire, consolidated their efforts to lift a heavy ball joint pipe connection on the top of the dredge, when he suddenly felt a sharp pain in his back and thereafter was unable to straighten up for several minutes; that as a result thereof he suffered an injury to his lower back in the lumbar region which rendered him totally and permanently disabled to perform *208 the kind of work he was engaged in at the time of the accident; that though he suffered severe pain in his back, he remained on the job doing light work until mid-afternoon, when he reported to R. C. Paulk, Captain of the dredge, that he had been injured (he admits that he is not certain that Captain Paulk heard him when he reported the accident); that he then visited H. H. Walther, clerk on the dredge and reported the accident to him and was advised to see a doctor, but did not get the customary doctor’s authorization card; that he received medical attention at the Lake Village Infirmary in Arkansas and after several days returned to work on the dredge, but that he was only able to work a portion of each day for one or two days; that thereafter he performed only light work until March 29, 1944, when he was discharged; and that he still continues to suffer with his back.
Five witnesses testified, either personally or by deposition, on behalf of the plaintiff: Daniel A. McIntyre, A. L. Jackson, Mrs. Ohlhausen, plaintiff’s wife, Mrs. Reeves, his landlady, and Dr. E. H. Maurer.
McIntyre’s testimony was to the effect that he had worked with plaintiff at the time of the accident and that he knew plaintiff had suffered an injury during the month of March, 1944. While it is true that McIntyre testified “he certainly suffered an injury. I was right there at the time it happened”, a reading of his deposition in its entirety convinces us that he did not witness the accident, but heard that plaintiff was suffering from his back. This is borne out by the plaintiff,, himself, who said that Hebert and Rivoire were the only two employees with him at the time. It occurs to .us that if McIntyre had witnessed the accident plaintiff would certainly have alleged that fact.
Jackson testified that he had known the plaintiff for about one and a half years before the trial of the case, having worked with him at Higgins Aircraft Company after the alleged accident and that the plaintiff complained and suffered a great deal with his back and, in consequence thereof, was only able to do very light work.
Mrs. Ohlhausen testified that some time during the first week of March, the exact date being unknown to her, her husband came home very early in the afternoon, saying that his back had been injured in conjunction with his efforfito lift a heavy ball joint; that she accompanied him. to the Infirmary, where his back was strapped; that he remained at home a few days and then reported to work where he remained for only a part of each day; that he had suffered a similar injury in Jacksonville, Florida, in 1942; that he was fired on March 29, 1944; and that since the accident he has never been able to perform the kind of work he was engaged in at the time of its occurrence.
Mrs. Reeves testified that plaintiff, his wife and baby lived at her home during the month of March, 1944, and that plaintiff suffered during the whole time with his back from an injury he informed her he had received during the first week in March.
Dr. E. H. Maurer, a physician in the City of New Orleans, testified that he did not examine the plaintiff until the latter part of 1946, a year and a half after the alleged accident and that he could only state the length of time the condition of plaintiff’s back had existed from the history given 'him by plaintiff; that plaintiff had informed him that he was injured in March, 1944, while lifting a six hundred pound object with three other men (plaintiff testified that there were two other men). Dr. Maurer was of the opinion that plaintiff’s knees were in a straight leg position, which is abnormal and a bad position when lifting objects, often causing strains and that plaintiff had probably “pulled a ligament loose and a hemorrhage took place and fibrosis occurred in the tissues causing the trouble.” It is obvious from a casual reading of the foregoing that Dr. Maurer was testifying exclusively from the history given him by plaintiff and when considered in its most liberal aspect, this medical testimony is extremely speculative.
Two letters were introduced in evidence from Dr. J. H. Burge, the physician who attended plaintiff on March 1, 1944, at the Lake Village Infirmary.
*209 The first of these, dated April 3, 1944 and addressed “To Whom It May Concern” ■reads: “We have treated William H. Ohl-hausen for a strain of the lumbar muscle by strapping with adhesive. He still complains of some stiffness in his back.”
The second letter, dated July 6, 1944, is addressed to “Jones, Flanders & Waech-ter”, counsel for plaintiff, and states: “When Mr. Ohlhausen consulted us about his condition, he stated that he had had previous attacks of lumbago. He had an attack when we saw him and advised him to go to Campbell’s Clinic but have not seen him since that time.”
The record reveals that plaintiff was also treated by Dr. O’FerraM but he was not called as a witness in spite of the fact that the trial judge offered to give ample time to plaintiff’s counsel to procure his testimony.
In support of the defendants’ contention that plaintiff did not suffer an accident on March 1, 1944, they introduced in evidence the testimony of R. C. Paulk, the Captain of the dredge, and L. A. Dierlam, an employee.
Captain Paulk testified that the first he heard of any accident in which plaintiff was injured was in September or October, 1944, when he was contacted by an investigator of the insurance company; that plaintiff worked, with the exception of one or two days, all during the month of March, working overtime on several occasions and on 'Saturdays and Sundays and this is substantiated by a “Schedule of Weekly Earnings” appearing in the record; that as he was in general charge of the dredge he had ample opportunity to observe the plaintiff and that during this time he did his usual work; that he fired plaintiff on March 29, 1944 for having “spudded” the dredge while it was in motion, contrary to instructions, thereby causing a “spud” to break; that while this incident occurred several days previous to' the actual discharge of plaintiff, he kept him on in order that he could help do “the dirty work” in repairing, the damage which he had caused; that plaintiff had a recurrent back ailment which caused him to “kink” over and that he had lost time with his back at Jacksonville, Florida and at Bayou Barrataria; that when plaintiff had one of these attacks “he went into a stooped position and he could not straighten up.”
Dierlam testified that he did not see the alleged accident, although he “heard” from some of the other employees that plaintiff “hurt” his back while lifting a “ball joint”. He further testified that he had known plaintiff for many years and heard him complain of his back on previous occasions, particularly when they were working in Jacksonville, Florida.
Defendants also introduced into the record documentary evidence showing that plaintiff was injured in an accident in Orange, Texas, on May 1, 1940, when the automobile in which he was riding was struck by a truck, owned and operated by the Union City Transfer Company and that plaintiff instituted suit in Texas. Under the Acts of Congress defendants offered in evidence in the case before us, certified copies of plaintiff’s first amended original petition in the automobile damage suit, an agreement for settlement, judgment of court and the release executed in connection therewith. In Article IV of this petition it was alleged:
“ * * * he can only work about one-half of the time and will not in all probability be able to work for any greater length of time in the future.
“That as a result of said collision aforesaid plaintiff’s left hand and arm were severely bruised and lacerated. That he suffered a contusion of the right knee and that the muscles and bones in his back were severely bruised, torn, lacerated and broken. That his left knee was fractured, and that he suffered much pain and mental anguish by reason of said injuries and will in all probability continue to suffer therefrom through the remainder of his natural life."
On cross-examination plaintiff admitted that he had sustained an injury to his back by virtue of the foregoing accident and that he had signed an agreement for settlement, whereunder his claim for $2,950, $2,500 of which was for personal injuries, was compromised for the sum of $925.
*210 A careful analysis of the record convinces us that plaintiff has failed to prove that he suffered any injury on March 1, 1944 and this conclusion is substantiated to a great extent by plaintiff’s own testimony to the effect that he worked almost every day during the month of March, about ten days of which he worked overtime, or a total of twelve hours each day, until he was discharged on March 29, 1944. It taxes our credulity to believe that a man suffering with a severe back injury could work twelve hours a day, irrespective of the nature of the work. Moreover, the only eye witnesses, according to plaintiff, who could definitely have corroborated plaintiff’s statement that an accident occurred— Hebert and Rivoire — did not testify either personally or by deposition and plaintiff made no effort to explain his failure to produce or call them as witnesses. The failure to avail himself of these important witnesses leads to the conclusion that if they had testified they would not have corroborated plaintiff’s factual account of the alleged accident.
In Succession of Yeates, 213 La. 541, 35 So.2d 210, 215, the Supreme Court reiterated a rule which has become well established in our jurisprudence: “that a person failing to call available witnesses possessing peculiar knowledge of facts that are essential to the proof of the case, or to produce more explicit, direct, and satisfactory concrete evidence than that relied on although able to, raises the inference or presumption that the testimony of the absent witnesses would not sustain his contentions and that the concrete evidence, if produced, would prove detrimental to his cause, particularly when the testimony of the person attempting to establish his case has been put in doubt but is susceptible of corroboration.”
This rule is equally applicable in Workmen’s compensation cases. McLain v. National Mut. Casualty Co., La.App., 28 So.2d 680.
In conclusion it will be observed that plaintiff did not allege that the injury which he insists he incurred on March 1, 1944, aggravated a preexisting injury suffered by him, but on the contrary, plaintiff has, by virtue of the allegations in his petition and his testimony endeavored to prove that an accident occurred on March 1, 1944 which, per se, caused his present back ailment, a fortiori, plaintiff has negated any possible finding by this court that the injury to plaintiff’s back, received in the automobile accident on May 1, 1940, was in any way aggravated by the alleged accident of March 1, 1944.
For the reasons assigned the judgment appealed from is annulled, avoided and reversed and it is now ordered that there be judgment herein in favor of defendants dismissing plaintiff’s suit at his cost.
Reversed.