170 So.2d 518 (1965)
Cleophile BABINEAUX, Jr., Plaintiff-Appellant,
v.
The SOUTHEASTERN DRILLING CORPORATION et al., Defendants-Appellees.
No. 1252.
Court of Appeal of Louisiana, Third Circuit.
January 5, 1965.
Rehearings Denied January 27, 1965.
Writ Refused March 29, 1965.
*520 Piccione & Piccione, by Peter C. Piccione, Lafayette, for plainiff-appellant.
Deutsch, Kerrigan, & Stiles, by Marian Mayer Burkett, New Orleans, Davidson, Meaux, Onebane & Donohoe, by Raymond Allen, Lafayette, for plaintiff-appellee.
*521 EN BANC.
TATE, Judge.
This is a suit for workmen's compensation. The plaintiff Babineaux, a Louisiana resident, was injured in Kuwait, on the Persian Gulf, while engaged in oil-field work. He had been recruited while in Louisiana to perform this work overseas.
The plaintiff's suit was dismissed on exceptions. He appeals. We have earlier overruled the defendants' motion to dismiss the plaintiff's appeal as not timely perfected. La.App., 166 So.2d 742.
The plaintiff alleges that his injury was sustained in the course of his employment with the Seacat Offshore Drilling Company, the Seacat Marine Drilling Company, and the Southeastern Drilling Corporation, subsidiaries or affiliates of one another. These companies were made defendants together with their alleged compensation insurers. Exceptions to the jurisdiction were sustained as to the two former alleged employers and their insurers, while an exception of no cause of action was sustained as to the latter employer and its insurer.
We will discuss separately the plaintiff's claim against each of the defendants, insofar as different questions are presented.
I. Exceptions to the Jurisdiction: Seacat Offshore and Seacat Marine: factual basis.
Seacat Offshore was the plaintiff Babineaux's immediate employer. However, for purposes of the jurisdictional exception, Seacat Marine's position is considered identical as an alleged co-employer participating in the employment of Babineaux through activities in Louisiana which allegedly give this state jurisdiction of a suit on a cause of action arising out of this Louisiana-connected employment relationship.
Neither Seacat Offshore nor Seacat Marine have qualified to do business in this state, and neither of these Panamanian corporations have consented to be sued here. Louisiana jurisdiction is sought on the basis of LSA-R.S. 13:3471(1), as amended by Act 32 of 1960.[1] This statute pertinently provides that a foreign corporation which "has engaged in a business activity in this state" may be sued in Louisiana upon "a cause of action resulting from such business activity in this state".[2]
The plaintiff Babineaux contends that Louisiana has jurisdiction of his suit to recover for personal injuries because it is founded upon a cause of action resulting from his employment by the defendants through business activities conducted in this state.
Evidence was taken at the trial of the exceptions, supplementing uncontradicted allegations of the plaintiff's petition. The plaintiff relies upon the following Louisiana business activity as the basis of this state's jurisdiction as this cause of action:
The defendants advertised in a Lafayette, Louisiana, newspaper to solicit workers for *522 offshore drilling work in the Persian Gulf. Applicants were instructed to appear at a Lafayette motel for interview commencing February 29th and continuing through March 2, 1960.
In response to this advertisement, Babineaux, a resident of Lafayette, reported on one of these dates at this Lafayette, La., motel. An interview of the plaintiff and of other applicants was conducted by an employee of Southeastern (one of the defendants) and an agent of the Seacat companies. As a result of information given to him, Babineaux then completed in Lafayette, La., an application for overseas employment.
About a month later, Babineaux was notified in Lafayette, La., to report to Dallas, Texas, for further interview. He was offered employment with Seacat Offshore in drilling work in the country of Kuwait in the Persian Gulf. In Dallas, he was given an employment contract for execution.
This employment contract was taken by Babineaux back with him to Lafayette, La., his home. After discussion with his wife, he telephoned from Lafayette, La., to Southeastern's office in Dallas, informing them that he would accept the overseas employment. He then executed in Lafayette, La., the employment contract in question, mailing it back to Dallas.
Babineaux was instructed to report to certain physicians in New Orleans, La., about a week later, for physical examination and to receive overseas innoculation. He went there from his home in Lafayette, La., was examined in New Orleans by doctors on behalf of his employers, and then returned to his home in Lafayette to await further instruction. (It is contended that he drew pay from the defendant employers during this period.)
On May 18, 1960, about two weeks later, Southeastern sent to Babineaux in Louisiana a copy of the completed employment contract (which its officer testified had been finally signed by him in Dallas on May 17th), together with a travel allowance check, a passport, a plane ticket, and an itinerary of the trip to Kuwait. In accordance with these instructions, Babineaux reported to New Orleans, La., on Friday, May 20th, taking the plane therefrom en route to Kuwait. According to his contract of employment, his pay commenced at the very least on this date, while he was still in Louisiana.
Several other employees were engaged for overseas operations as the result of the Lafayette activityfor Seacat Marine and Seacat of Iran as well as for Seacat Offshore, the plaintiff's immediate employer. Tr. 157.
The drilling rig for the Kuwait operation in which the plaintiff was injured, was assembled and repaired in Louisiana, and it was shipped from this state to Kuwait for use in those drilling operations.
The plaintiff thus contends that the employment relationship giving rise to his cause of action was entered into as the result of substantial business activity by the defendant employers in this state, so as to entitle this state to exercise personal jurisdiction over such defendants in a cause of action resulting from it.
(To complete the factual picture: The plaintiff was injured in Kuwait ten days after he left this state. Pursuant to the contract of employment, he was returned home to Louisiana at the expense of his employers. After returning home to Louisiana on July 10, 1960, Babineaux sought and was given substantial medical attention in Lafayette, La., allegedly pursuant to advice from defendants' agent to seek treatment for his condition from doctors in his home area in Louisiana.)
*523 II. Seacat Employers's Exceptions to the Jurisdiction: 1960 Louisiana procedural statute basing jurisdiction on "a business activity" in Louisiana: Its application to present facts.
The Seacat exceptions to Louisiana jurisdiction in personam are based upon the contention that the business activity described above is insufficient so as to confer upon Louisiana courts the jurisdiction of cause of action related to it. It is further suggested that this cause of actionfor compensation benefits because of an accident in Kuwaitis insufficiently connected with the Louisiana business activity as to satisfy the statutory and constitutional requisites in such regard.
In the determination of these contentions, it is instructive to discuss the legislative history of LSA-R.S. 13:3471(1) as amended in 1960, the procedural statute under which jurisdiction over these foreign corporations is sought on the basis of their having engaged in "a business activity in this state." We must refer as well to the United States Supreme Court decisions upon which this expansion of personal jurisdiction over non-residents is based to the extent constitutionally permissible.
For many decades it was thought that a foreign corporation could not be sued in a forum state if the corporation was not domiciled or authorized to do business there. However, in the landmark decision of International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Supreme Court recognized that, without offending the federal constitution, a state may exercise personal jurisdiction over such a foreign corporation, providing that it had certain minimum contacts with the forum state"such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there." 326 U.S. 317, 66 S.Ct. 158. The Supreme Court stated: "* * * to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue." 326 U.S. 319, 66 S.Ct. 160.
In the International Shoe case, the foreign corporation was held to have sufficient contacts in the forum state through the continuous activities of its salesmen in soliciting orders, even though the corporation did not itself maintain a permanent office nor execute sales or other contracts in the forum state itself.
Following this decision, the ancestor provision of LSA-R.S. 13:3471(1) of 1960 (hereinafter referred to as the "1960 procedural statute"), was enacted, namely, LSA-R.S. 13:3471(5)(d), as amended by Act No. 21 of 1950. A specific purpose of the 1950 amendment was to permit Louisiana to exercise the full potential of the International Shoe case. (See Law Institute note, "History and Source of Law", annotating the 1951 edition of West's Louisiana Revised Statutes.) This 1950 enactment provided for Louisiana jurisdiction over all causes of action resulting from acts performed in this state through the foreign corporations having "engaged in business activities in this State through acts performed by its employees or agents in this State." A 1954 reenactment included the same provision. Act 142 of 1954.
In 1957 the Supreme Court decided McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223. This decision expanded somewhat the constitutionally permissible area of a state's exercise of personal jurisdiction over a foreign corporation. Succinctly, the court stated that, to overcome federal constitutional objections, it was sufficient that the *524 forum suit be based upon a contractual relationship "which had substantial connection" with the forum state. 355 U.S. 223, 78 S. Ct. 201.
In the McGee case, the beneficiary brought suit in California, the state of her domicile, to recover upon an insurance policy issued by a Texas company. The company or its predecessor had never maintained any office or agent in California; nor had it ever solicited or done any insurance business in California, apart from the policy involved. Nevertheless, the Supreme Court held California's jurisdictional statute to be valid, permitting suit in California against a non-resident company, based upon the substantial connections with California (which the Supreme Court specified were (a) delivery by mail of the contract in California, (b) mailing of the premium therefrom, and (c) the residence of the insured there at the time he died), as well as upon California's substantial governmental interest, in these circumstances of California-connected business activity, to provide an effective remedy in its own courts for its residents against foreign corporations. 355 U.S. 223, 78 S.Ct. 201.
Louisiana's 1960 procedural statute was specifically amended to take advantage of the full potential of the McGee case, as well as of the International Shoe decision. (Law Institute Explanatory Note to LSA-R.S. 13:3471, as amended by Act 32 of 1960.) The 1960 statute, for instance, dropped the former requirement that the business activity in this state be done by a corporation's agents or employees in Louisiana. Further, where the former requirement was that the corporation's presence in Louisiana for jurisdictional purposes be manifested through "business activities in this State through acts performed by its employees or agents in this State" (Act 21 of 1950), the revised requirement found in the 1960 statute is simply that the corporation have engaged in "a business activity in this state." See Footnote 1 above, for full text of the 1960 procedural statute.
Applying the statutory test in the light of the legislative intent (and within its constitutionally permissible limits), we think that, under this statute, Louisiana has jurisdiction of this suit. It was filed by a Louisiana resident upon a cause of action resulting from the defendants' business activity in Louisiana. The latter's business activity in this state was for the purpose of confecting an employment relationship with the plaintiff, who was a Louisiana resident at the time he was employed as a result of this business activity. The employers' liability for injuries in the course of the employment is an incident of the employment relationship so confected. This suit for compensation, based upon the employment relationship, thus results fromi. e., arises as a consequence of, Black's Law Dictionary (4th ed., 1951), verbo "result", p. 1478the substantial Louisiana business activity directed towards the creation of such employment relationship.
Louisiana's governmental interest in providing an effective forum is manifest in instances of this nature.
The Louisiana resident, skilled and ablebodied, is recruited through activities in Louisiana to work elsewhere. In the course of the employment relationship confected through such substantial Louisiana contacts, the employee is injured and then returned home to Louisiana from which he had been recruitedreturned home, but now crippled and in need of medical attention, possibly a charge upon the public of Louisiana unless he can effectively pursue his compensation remedy.
His employers are Panamanian corporations. According to the testimony of their employee, they maintain no office in the United States; their only office is in Kuwait on the Persian Gulf. Because some of their business activity took place in Texas, it is suggestedas a defense to this Louisiana suitthat Texas is the proper American forum for the plaintiff's suit. But a *525 suit by the employee in Texas might likewise be defended by the suggestion that Louisiana, not Texas, was the proper forum. And Texas might not have a procedural enactment permitting as broad an exercise of jurisdiction over foreign corporations as does Louisiana's statute.
The plaintiff is domiciled in Louisiana. He was recruited while a resident here. He is now disabled in this state. He needs medical attention here in his Louisiana domicile. A distant forum, in Kuwait or in Panama or even in Texas, places him at an obvious disadvantage. It is one which Louisiana no longer is required by the federal constitution to force him to endure, since his cause of action for his disability arises as a consequence of his employers' substantial business activity in Louisiana to employ him for the work in which he was injured.
Further, in this particular instance, Texas, the other possible American situs for the employment relationship, happens to be adjacent to the present forum state in which the employment relationship arose when the forum resident was recruited through activities here. However, if the recruiting activities here in Louisiana do not constitute enough of a business activity to give Louisiana jurisdiction over the recruiting corporations in suits arising from the recruitmentneither would they, were the other prospective employer-connected American jurisdiction a continent away, such as in California or Alaska or Maine.
Louisiana residents recruited in Louisiana through employer activities in Louisiana, were intended by our legislature to have a Louisiana forum available to them for causes of action arising out of these employer activities based in this state, whereby the employers voluntarily and purposefully took advantage of the benefits and the protection of the laws of this state. The Supreme Court of the United States has recognized that Louisiana can constitutionally hold these foreign employers to a consequent duty to respond in our courts to suits to enforce obligations arising out of or connected with these activities in this state.
III. Seacat Employers's Exceptions to the Jurisdiction: The contention that more continuous business activity is requisite to jurisdiction over foreign corporations.
Able counsel persuasively contends that the single set of Louisiana employing activities on the part of the Seacat defendants-appellees did not constitute sufficient business activity by them within Louisiana so as to justify this state's exercise of jurisdiction. Essentially, seemingly based upon the facts and holding in International Shoe, counsel contends that the constitutional exercise of personal jurisdiction over a non-resident requires that the activities of the non-resident be both continuous and systematic, so that sporadic and non-recurring presence is not sufficient to meet the minimal contact rule.
This argument fails to recognize or mention the broader test recognized by McGee v. International Life Insurance Co. McGee measures the jurisdictional reach of Louisiana's 1960 procedural act.
Reliance is placed, for instance, upon certain expressions in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), decided in the same term as McGee. We find nothing in this decision that limits or restricts the McGee rule, as contended by the Seacat defendants.
Hanson v. Denckla concerns a Florida suit by a settlor then residing in Florida to recover part of a Delaware trust which the settlor had established in Delaware several years before she moved to Florida. The Supreme Court affirmed the refusal of the Delaware courts to recognize the jurisdiction of Florida over the Delaware trustee. The Court held that Florida did not have jurisdiction over the defendant because that state did not have the minimal contacts with the Delaware trust and trust *526 company which were requisite to Florida's exercise of power over the non-resident defendant.
In so holding, the Supreme Court noted that the Florida suit involved "the validity of an agreement that was entered without any connection with the forum State", 357 U.S. 252, 78 S.Ct. 1239. The Court stated that there were no minimal contacts since: "The defendant trust company has no office in Florida, and transacts no business there. None of the trust assets has ever been held or administered in Florida, and the record discloses no solicitation of business in that State either in person or by mail. * * * [Citations omitted.] The cause of action in this case is not one that arises out of an act done or transaction consummated in the forum State." 357 U.S. 251, 78 S.Ct. 1238.
In our opinion, the holding in Hanson v. Denckla, under its facts, is perfectly consistent with our present holding under the present facts. Here, as compared with Hanson, are much greater contacts between the non-resident defendants and the present forum state. Of pertinence to the present appeal, the Court in Hanson v. Denckla stated that, as to minimal contacts necessary to sustain jurisdiction, "* * * it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." 357 U.S. 253, 78 S.Ct. 1240. This test, we believe, is met by the Louisiana activities of the present Seacat defendants, who were purposefully present in Louisiana to employ oil-field workers including the plaintiff in overseas work.
The Seacat defendants cite several other decisions in support of their thesis that more continuous and systematic business activity than that instanced herein is required as the minimal contacts necessary to sustain jurisdiction over a foreign corporation. These cases are easily distinguishable, and fall generally into two main groups:
(1) Where the statutory test of jurisdiction is "doing business" in the state (as contrasted with the broader test of the 1960 Louisiana statute applicable to the present suit, that of engaging in "a business activity" out of which the cause of action results): Wyss v. Good Hope Placers, Inc., La.App. 1 Cir., 106 So.2d 10 (where the statutory test was still the pre-1960 one of engaging in business activities through acts performed by agents or employees in this state, and there was not an iota of evidence that the corporation had ever done any business in Louisiana); Stanga v. McCormick Shipping Corp., CCA 5, 268 F.2d 544, 1959 (again seeking jurisdiction over a foreign corporation under the pre-1960 Louisiana jurisdictional statute; the court unanimously agreeing that the conduct in question was a business activity in Louisiana and that the cause of action was causally related to it; but a majority of the court holding that there was no Louisiana jurisdiction only because the business activity was not performed through employees or agents in Louisiana, a pre-1960 jurisdictional requirement which the 1960 procedural statute repealed); Mississippi Wood Preserving Co. v. Rothschild, CCA 5, 201 F.2d 233, 1953 (state procedural statute test, "doing business", interpreted as requiring a series of acts amounting to a continuity, as contrasted with occasional, single, sporadic, episodic); Mueller v. Steelcase, Inc., Minn.D., 172 F.Supp. 416, 1959 (jurisdictional statute test: one committing a tort in Minnesota against a Minnesota resident is deemed to be "doing business in Minnesota"; court held that the defendant foreign resident committed no tortious act in Minnesota so as to be subject to jurisdiction, and the minimal Minnesota activities did not constitute doing business there); Holtkamp v. States Marine Corp., 165 Cal.App.2d 131, 331 P.2d 679, 1959 (jurisdictional statute test: "transacted intrastate business"; statutorily defined as: "entering into repeated and successive transactions of its business in this State, other than interstate or foreign commerce"); *527 McGriff v. Charles Antell, Inc., 123 Utah 166, 256 P.2d 703, 1953 (jurisdictional statute test: "does business in this state").
(2) Where the cause of action sued upon did not result from the particular business activity conducted by the foreign corporation in the state: Universal Carloading & Distributing Co. v. Saia Motor Freight Line, La.App. 4 Cir., 156 So.2d 608; Buckley v. New York Times Co., CCA 5, 338 F. 2d 470 (1964); Nigro v. Eagle Star Ins. Co., E.D.La., 216 F.Supp. 205, 1963. The former two decisions are particularly illustrative.
In the Universal Carloading case, the plaintiff, suing for damage to goods shipped by railroad, attempted to implead the Pennsylvania Railroad as a co-defendant. Pennsylvania, which had no trackage in Louisiana, had aided in shipment of the goods from New York to Illinois, from whence another railroad had transported the goods to Louisiana. Although Pennsylvania maintained a Louisiana office for solicitation of passenger and freight business, the shipment in question was not solicited by or through this Louisiana office. The court held that therefore the plaintiff's claim for damage did not arise out of any business activity in Louisiana and, hence, Louisiana did not have jurisdiction of the Pennsylvania Railroad under Louisiana's 1960 procedural enactment.
In the Buckley case, a libel suit, Louisiana jurisdiction was sought over the New York Times and several other papers based upon their publication of an Associated Press story. The crux of the decision is the court's statement that "The law is well settled that the mere circulation of a periodical through the mails to subscribers and independent distributors constitutes neither doing business nor engaging in a business activity." The libel did not result from the newspapers' other minimal Louisiana activities, including the occasional soliciting of advertising in Louisiana and the occasional sending of staff reporters here (none of the newspapers' own reporters had participated in the alleged libel-incident represented by publication of the Associated Press story); nor did these sporadic and minimal state contacts constitute such a doing of business as to justify Louisiana's exercise of personal jurisdiction over these foreign newspapers on this cause of action.
Here, in the case now before us, we have a direct relationship between the Louisiana plaintiff's cause of action and the substantial Louisiana business activities of the foreign employers out of which the plaintiff's suit arose. The present plaintiff's cause of action, based upon his employment relationship with the Seacat companies, is directly connected with the business activity in Louisiana of these foreign corporations: their advertising for, interviewing, taking the applications of, and having medically examined prospective employees, all in Louisiana, as a result of which the plaintiff entered in Louisiana into the employment relationship confected as a result of these substantial contacts with this state.
Here, the cause of action sued upon results directly from the purposeful activity in Louisiana of the foreign corporations. Louisiana jurisdiction was sustained on a much less direct relationship between the Louisiana activity and the cause of action, by the reasoning of our brothers of the First Circuit in Covington v. Southern Specialty Sales Co., La.App. 1 Cir., 158 So. 2d 79. There, in a suit for personal injuries arising out of a defective lawn mower, the court upheld Louisiana jurisdiction over Falls Products, Inc., a foreign manufacturer of the machine. That company engaged in extremely minimal and sporadic business activity in Louisiana. However, Louisiana was held to have jurisdiction because such activity was connected with sales in Louisiana of mowing machines such as injured the plaintiff (even though not directly with the sale to a retailer of the machine that injured plaintiff after the retailer sold it), and because the defendant manufacturer had in these minimal and sporadic business contacts purposely entered Louisiana for such *528 purpose, so as to subject itself to personal jurisdiction as to causes of action directly or indirectly growing out of such activity.
In conclusion, for the reasons noted in II and III above, the exceptions to personal jurisdiction filed by the Seacat defendants must be overruled.
IV. Exception to the Jurisdiction: St. Paul Mercury.
The trial court also dismissed the suit as against the defendant, St. Paul Mercury Insurance Company, upon its exception to the court's jurisdiction.
St. Paul Mercury had issued a workmen's compensation insurance policy to, inter alia, the defendants, Southeastern and Seacat Offshore, insuring them against workmen's compensation liability to American and European nationals arising out of their Saudi Arabia-Kuwait operations. The policy included a provision that the company should be directly and primarily liable to any person entitled to workmen's compensation benefits. The policy was issued in Texas.
St. Paul Mercury had qualified to do business in Louisiana and had appointed our secretary of state as its agent for service of process "in any action or proceeding against such insurer." LSA-R.S. 22:985. Such a consent to suit has been held in many states to include a consent to suit on foreign causes of action, and such a consent as prerequisite to doing business in a state has been held to be constitutionally valid. Couch on Insurance 2d (1959), Section 21.88.
St. Paul Mercury contends, however, that this statutory consent to suit applies only to causes of action arising in this state. Cited in support of this contention is Harmann v. United States Fidelity and Guaranty Co., W.D.,La., 64 F.Supp. 36 (1946). This case, however, is distinguishable on at least two grounds: (1) At issue was an interpretation of the narrower statutory predecessor of LSA-R.S. 22:985, namely Act 105 of 1898, Art. II, sec. 1; (2) at issue was a foreign policy provision, valid in the state of issuance, preventing a direct action by the injured person against the insurer under the liability policy there at issue.
Prior to recent statutory expansion of jurisdiction over non-residents, the general rule (initially founded upon statutory language to such limiting effect) was that a foreign corporation's consent to be sued in Louisiana only waived jurisdiction as against causes of action growing out of or connected with the forum state. Comment, Amenability of Foreign Corporations to Suit in Louisiana, 14 La.Law Rev. 625 (1954). Pretermitting whether such a restriction still obtains under our present statutory provisions, and assuming for present purposes that the consent to suit in Louisiana by a foreign insurer is only intended reasonably to be a consent to be sued upon causes of action growing out of or connected with Louisiana, we think that the present insurer's consent to be sued in Louisiana did at the least include within its scope a consent to be sued upon the present cause of action founded upon an employment relationship confected as the result of substantial activities in Louisiana and substantially connected with this state.
If this suit were founded on Louisiana's Direct Action Statute, LSA-R.S. 22:655, such statute by its own terms applies only where the accident or injury occurred within Louisiana. The statute in question permits a direct action against the insurer despite a contrary policy provision, which policy provision foreign insurers are required to waive as a condition of doing business in this state, LSA-R.S. 22:983. However, the present policy issued by St. Paul Mercury does not contain a "no action" prohibition; it in fact expressly permits direct action against it by an injured employee seeking recovery under the workmen's compensation law. The present suit is thus not based upon the direct action statute, and the limitation therein, preventing *529 actions on non-Louisiana accidents, is not applicable to the present suit.
We must therefore overrule the exception to jurisdiction filed by St. Paul Mercury.
V. Exception to Jurisdiction: American Foreign Insurance Association.
The American Foreign Insurance Association was impleaded as the alleged insurer of one of the employer defendants.
On the trial of its exception to the jurisdiction, it was shown that this insurer was never authorized to do business in Louisiana, nor had it ever consented to suit here. There was no showing that this company had done any business or written any policy in this state. (As a matter of fact, it is denied that this company had issued any insurance policy whatsoever to any of the defendant employers.)
The trial court correctly sustained the exception to the court's personal jurisdiction filed by this defendant insurer.
VI. Exception of No Cause of Action: Southeastern Drilling Corporation.
Southeastern, made defendant as an alleged co-employer, was dismissed upon an exception of no cause of action. (Southeastern, a Texas corporation, was amenable to suit in Louisiana as a foreign corporation qualified to do business here.)
The basis of the exception is that the pleadings as expanded by the evidence affirmatively show that the plaintiff Babineaux was employed solely by Seacat Offshore. Consequently, it is contended, Southeastern cannot be liable in workmen's compensation because it is not the direct employer of Babineaux. It is further contended that the evidence affirmatively shows that Southeastern had no control or connection with overseas operations of Seacat Offshore in which the plaintiff was injured.
Nevertheless, Southeastern may still be liable for workmen's compensation if involved in Seacat's Kuwait operations as a joint enterprise, or if Southeastern shared control of the Kuwait operations of Seacat Offshore, the plaintiff's immediate employer. Robinson v. Younse Lbr. Co., 2 Cir., 8 La.App. 160. See also: Book v. Police Jury of Concordia Parish, La.App. 2 Cir., 59 So.2d 151; Brasher v. Industrial Lbr. Co., La.App. 1 Cir., 165 So. 524; Langston v. Red Iron Drilling Co., D.C.W. D.La., 38 F.Supp. 136 (1941). Where "the employee is subject to the joint control of several employers at the same time and for the same work, he is entitled, if injured, to subject them all to his compensation claim. * * * If the work being done at the time of the accident was in furtherance of a joint enterprise shared by all employers, so that each of them had a direct financial interest in the entire job, we are presented with a case of partnership or joint enterprise liability. * * * It is not necessary, that each partner or joint venturer personally control the work of the injured employee. It is sufficient that they are engaged in a common enterprise that contemplates the employment and control of the claimant by one of the interested parties for the benefit of all. * * *" Malone, Louisiana Workmen's Compensation Law (1951), Section 58, pp. 66-67.
The plaintiff alleges that Southeastern and the Seacat companies, as divisions, subsidiaries, or affiliates of each other, were his employers in the drilling operations in Kuwait in which injured. These allegations were enlarged by evidence admitted without objection at the trial of the exceptions.
This evidence consisted of the testimony of Spencer Taylor, the Vice President-Foreign of Southeastern. He was also an employee of Seacat Offshore, the plaintiff's immediate employer. Taylor had executed the plaintiff's contract of employment on behalf of Seacat Offshore. From the testimony of this witness, the following facts or permissible inferences are shown:
Seacat Offshore "was organized to perform under a two-year drilling contract for *530 the Arabian Oil Company offshore of the [Kuwait] Neutral Zone." Tr. 150. Perhaps six other South American corporations had likewise been organized, each to conduct drilling operations under a separate drilling contract. Each of these corporations operated a single drilling rig under a zone manager. The activities of all of these zone managers were coordinated by an "area manager" jointly paid by all of them.
Under the plaintiff's contract of employment with Seacat Offshore, it was provided that he could be transferred to another foreign area than Kuwait if Seacat Offshore "or one of its related Companies feel need of him there." Tr. 17, Condition 5(vi) of employment contract. Employees of these related overseas companies were in fact transferred from one to another. Tr. 160-161.
None of these overseas companies maintained an American office. The sole office of Seacat Offshore, for instance, was in Kuwait, the area of its actual operations. However, Seacat's American correspondence and transactions were handled through Southeastern's Dallas office, sometimes by Southeastern employees and sometimes by Seacat employees who used Southeastern's office from time to time. Southeastern's personnel manager handled the American end of employee relations for the overseas companies.
Southeastern's primary function, according to the witness, was to mobilize the rig and equipment for each operation and to ship same overseas, to requisition parts and supplies for the continued operation of the rig, and to provide a labor pool (the plaintiff Babineaux was hired as a result of same) of skilled American personnel for use by the overseas companies. Further, for instance, before Seacat Offshore commenced operations in Kuwait, Southeastern's Vice President-Foreign had gone to that country to prepare the way for Seacat Offshore's operations there. Tr. 183.
The stockholders of Southeastern owned 25% of the stock interest of each of these overseas one-rig drilling companies in the same proportion of ownership of Southeastern stock. The remaining stock interest of the overseas companies was owned by the same Texas and Lebanese interests. Although the witness did not recall whether Southeastern's officers were also officers of the Seacat companies, the evidence shows that Southeastern's president signed the plaintiff's wage check on behalf of Seacat Offshore; and, it is interesting to note, Taylor, the Seacat employee testifying (he did not recall whether he was also an officer of Seacat), who executed the plaintiff's employment contract on behalf of Seacat Offshore, is also the Vice President-Foreign of Southeastern.
Taylor also admitted that as Vice President-Foreign of Southeastern, he frequently participated in overseas activities. He noted that in the preceding year he had spent about five months in the Middle East to "participate in some of the policy-making decisions in the various areas and keep abreast of the drilling progress in the various areas" in which operations were conducted by the one-rig drilling companies. Tr. 182. He stated that, as Vice President-Foreign of Southeastern, "The foreign operations in the Middle East, countries of Iran, Persian Gulf, Pakistan, Turkey, are more or less under my jurisdiction", Tr. 168, and that "the responsibility for this operation rests in large part upon me", Tr. 169. Under him, Tr. 169, were the area managers paid jointly by the operating companies, who coordinated the work of the zone managers of each company.
We have previously noted that Southeastern through its employee directly participated in the interviewing of Babineaux in Louisiana, in advertising for applicants in Louisiana, etc. In addition, both before and after the claimant's injury, Southeastern's office and employees handled arrangements for the claimant's transportation to and from Kuwait, for the payment of *531 back-due wages, and in other contacts arising out of the plaintiff's employment with Seacat and his workmen's compensation claim.
Admittedly, whatever inferences of control or joint enterprise on the part of Southeastern might be drawn from this evidence, might not be sufficient to hold Southeastern liable for workmen's compensation to the plaintiff if this were a trial on the merits where the plaintiff was required to prove his case by a preponderance of the evidence.
However, this showing was made on the trial of an exception of no cause of action. It is true that evidence received without objection has the effect of enlarging the pleadings and may be considered in determining whether the plaintiff has a cause of action; even though evidence is not admissible for purposes of determining an exception of no cause of action, which is normally disposed of on the pleadings alone. Williams v. Marionneaux, 240 La. 713, 124 So.2d 919; Breaux v. Pan American Petroleum Co., La.App. 3 Cir., 163 So. 2d 406, and cases therein cited.
Nevertheless, the general rule applicable to trial of such exceptions is that an exception of no cause of action must be overruled unless the showing affirmatively establishes that under no evidence admissible under the pleadings does the plaintiff have a cause of action; that is, unless the allegations' showing excludes every reasonable hypothesis of facts other than those showing that the plaintiff cannot recover as a matter of law. West v. Ray, 210 La. 25, 26 So.2d 221; Steagall v. Houston Fire & Casualty Ins. Co., La.App. 3 Cir., 138 So.2d 433, and cases therein cited. However, the evidence admitted on trial of the exception may negative the allegations of the plaintiff's petition so as to justify the suit's dismissal. Rooks v. Williams, 13 La.Ann. 374.
The evidence admitted at the trial of Southeastern's exception does not negative the causes of action pleaded by the petition, nor does it exclude reasonable hypotheses of facts admissible under the pleadings by reason of which the plaintiff might be entitled to recovery. The exceptor has not, therefore, met the burden required to justify dismissing a suit upon an exception of no cause of action and without a trial on the merits. The evidence considered was based almost entirely upon the testimony of a single witness only partially familiar with or only partially remembering facts relevant to establishing or disproving Southeastern's liability for workmen's compensation. The plaintiff is entitled to his day in court on this issue by a trial on the merits.
The evidence does not, for instance, negative a joint control of operations by Southeastern, or a joint enterprise by it with Seacat Offshore, so as to render Southeastern liable in compensation for injuries sustained in the performance of the work involved. Likewise, for example, although Southeastern's officer stated that Seacat Offshore was organized "to perform under a two-year drilling contract", Tr. 150, the evidence does not negative this drilling contract having been secured by Southeastern and sub-contracted to Seacat Offshore; nor that Southeastern and the related ownership interests may have organized Seacat Offshore for the specific purpose of performing the drilling work of Southeastern and the other parent interests engaged in the production and sale of oil.
Since the petition alleges a cause of action for Louisiana or Texas workmen's compensation (see section VII below), Southeastern's exception of no cause of action must therefore be overruled.
VII. The Causes of Action Alleged for Workmen's Compensation Recovery.
The exception of no cause of action filed by Southeastern, and also that by Travelers (see VIII below), implicitly question the plaintiff's right to recover any workmen's compensation whatsoever by this Louisiana suit. That is, even if Southeastern is the plaintiff's employer, perhaps the cause of action *532 alleged is not enforceable by the Louisiana courts.
We will therefore at this point discuss the plaintiff's demand for a remedy in workmen's compensation.
The suit seeks recovery under the Louisiana compensation law or, alternatively, under the Texas compensation law; or else quasi-compensation benefits under the defendants' contractual agreement to pay benefits similar to such, 2 Larson, Workmen's Compensation Law, Section 87.73. See article 26 of petition. For purposes of the exceptions of no cause of action, if recovery is allowable in the present suit under either of the compensation statutes in question, we need not at this time determine whether the plaintiff's principal demand for Louisiana compensation must fail.
More than one state's statute can apply to a single compensable injury, so long as each state has a relevant interest in affording a compensation remedy. Larson, Section 85.00. However, a double recovery is not permitted; and benefits paid under one statute are deducted from those allowable under the other statute. Larson, Section 85.70; Leflar, Conflict of Laws, 1959, Section 138, p. 263.
In the present instance, the plaintiff makes a strong showing that the Louisiana compensation law should be applied to the employment relationship entered into by him in Louisiana as a result of substantial Louisiana-connected activity (see II above) by his employers. For instance, he departed from Louisiana for overseas employment as a result of an offer made to him here in Louisiana, so that under Ohlhausen v. Sternberg Dredging Co., 218 La. 677, 50 So. 2d 803, the Louisiana compensation act might be regarded as applicable to his employment relationship irrespective of the "intent" of the contracting parties.[3] Or see Williams v. Travelers Insurance Co., La.App. 1 Cir., 19 So.2d 586, certiorari denied, where the substantial Louisiana contacts in confection of the employment relationship justified application of this state's compensation law to a claim resulting from an Illinois work-accident, even though technically the contract of employment was consummated and entered into in South Carolina. Also, see Hunt v. Magnolia Petroleum Co., La.App. 1 Cir., 10 So.2d 109 (reversed on other grounds, 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149), where Louisiana's governmental interest in affording a remedy under its compensation law was recognized, when the employment relationship's inception had substantial Louisiana contacts.
In recent years, increasing recognition has been given to the right of a state to apply its own compensation law to an employment relationship with which it has substantial contacts, when the state has a legitimate governmental interest in the application of its own law. Larson, Sections 84.00 to 87.70; Leflar, Section 136 (p. 258). See also: Clark, Work-Injuries and the Constitution, Wash. U.L.Q. 1956: 320 (1956); Stone, The Forum's Policy and the Defense of Faith and Credit to Workmen's Compensation Acts, 41 Iowa L.Rev. 558 (1956); Hogan, Constitutional Implications of Workmen's Compensation and Choice of Law, 7 Hastings Law Journal 268 (1956); Cowan, Extra-territorial application of Workmen's Compensation Laws A Suggested Solution, 33 Tex.L.Rev. 917 (1955). Cf., also: Clay v. Sun Insurance Office, 377 U.S. 179, 84 S.Ct. 1197, 12 L.Ed. 2d 229 (1964).
Nevertheless, even in the event no recovery is allowable for Louisiana compensation *533 under the principal demand, the plaintiff's alternative demand (for benefits payable under the Texas compensation law) states a cause of action which may be enforceable in the Louisiana courts.
Normally, the courts of one state will not enforce the workmen's compensation law of another state if the statutory compensation liability is inextricably bound up with a local administrative remedy; as this court has recently recognized in refusing to enforce a liability arising under the board-administered Mississippi compensation law. Woodham v. Travelers Insurance Co., La.App. 3 Cir., 161 So.2d 368. On the other hand, as the authorities cited in that decision recognize, a cause of action for compensation under the laws of a foreign state may be enforced by the courts of a forum state, if the statutory right to recovery under the foreign act is not so inextricably connected with a foreign administrative procedure. Thus, the Mississippi courts will adjudicate claims based upon the court-administered Louisiana compensation act. Floyd v. Vicksburg Cooperage Co., 156 Miss. 567, 126 So. 395 (1930).
The United States courts have held that, since the proceeding for Texas compensation is a trial de novo (despite a prior adjudication by the Texas board), the courts of another jurisdiction may enforce claims under the Texas compensation act. Liberty Mutual Insurance Co., v. Horton, CA 5, 275 F.2d 148 (1960). For the reasons there alleged, we think that likewise the Louisiana courts may enforce claims based upon the Texas compensation law. Nevertheless, we note that although the court proceedings are a trial de novo, a condition precedent to the filing of the compensation suit may be some adjudication by the Texas board, see 275 F.2d 151. The present record is silent as to whether or not there was such a board adjudication; but, considering that the exceptors must negative a cause of action, we feel that the petition states a cause of action for Texas compensation by the alternative demand. (That is, it is unnecessary thus for us to consider at this time whether a final adjudication is a condition precedent to recovery in de novo court proceedings to recover Texas compensation.)
In our opinion, therefore, a cause of action for either Louisiana or Texas workmen's compensation benefits has been adequately alleged by the petition, so as to require us to overrule exceptions denying that any cause of action for workmen's compensation has been alleged by the plaintiff herein.
VIII. Exception of No Cause of Action: The Travelers Insurance Company.
Travelers was made defendant as a compensation insurer of Southeastern and Seacat Marine. Travelers had issued a policy in Houston, Texas, covering the liability of these insurers under the workmen's compensation laws of Louisiana, Texas, and several other states.
The remaining contention raised by Travelers's exception of no cause of action is that it is not liable for disability as a result of the plaintiff's industrial accident in Asia, because the Travelers insuring agreement provided in essence that its liability under the policy applied "only to accidents * * * within the United States" or its coastal waters.
We have previously noted that the workmen's compensation cause of action alleged is for benefits under the Louisiana or, alternatively, the Texas law.
The Louisiana compensation act provides: "No policy of insurance against liability under this Chapter shall be made unless the policy covers the entire liability of the employer." LSA-R.S. 23:1162. (Italics ours.) This is a "full coverage" statute by reason of which the liability of the insurer is coextensive with that of the employer under the compensation act in *534 question. Larson, Workmen's Compensation Law (1961), Section 93.20. While in Louisiana an employer engaged in more than one business may cover by separate policies each separate and distinct business, LSA-R.S. 23:1162 subd. B, a policy issued to cover the Louisiana compensation liability of a particular business must comply with the statute and will be construed as covering all compensation liability under the Louisiana statute of that business. Stepan v. Louisiana State Board of Education, La.App. 2 Cir., 78 So.2d 18.
As to the alternative claim for compensation under the Texas Law, a similar rule applies in Texas. An insurance policy issued to cover Texas compensation liability must be construed to cover the entire compensation liability under the Texas law. 2 Larson, Section 9341, citing Mulkey v. Traders & Gen. Ins. Co., Tex.Civ. App., 93 S.W.2d 582 (1936). A Texas compensation policy issued to cover liability under the Texas compensation act will cover extraterritorial accidents. Home Life & Accident Co. v. Orchard, Tex.Civ. App., 227 S.W. 705, cited as the current law in Texas, by Digest of Workmen's Compensation Laws (16th ed., 1961; Association of Casualty & Surety Companies), at "Texas", Topic 31 "Insurance", p. 52 (February 1962 annotations).
Decree.
For the foregoing reasons, the trial court judgment is affirmed insofar as it sustained the exception to the jurisdiction of the American Foreign Insurance Association; the trial court judgment is reversed insofar as it sustained the exceptions filed by all other defendants; and this case is remanded for further proceedings not inconsistent with the views expressed herein. The costs of this appeal are to be paid by the defendants-appellees other than the American Foreign Insurance Association; all other costs to await the final disposition of these proceeedings.
Affirmed in part; reversed and remanded in part.
HOOD, Judge (dissenting).
I agree with the majority that Louisiana has a legitimate interest in providing every citizen of this state who sustains an injury with a forum in which his claim arising out of that injury may be adjudged. I also agree that under LSA-R.S. 13:3471, as amended by Act 32 of 1960, the courts of Louisiana are permitted to exercise the full potential of jurisdiction, in personam, over foreign corporations allowed by the decisions of the United States Supreme Court in International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, and McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223.
I am not able to agree with my sincere colleagues, however, in their conclusion that the defendant employer, Seacat Offshore Drilling Company, a foreign corporation not qualified to do business in this state and having no office, agent or employee here, has had sufficient contact with the State of Louisiana to make it amenable to the jurisdiction of a court of this state through substituted service of process.
I realize that the principles of law originally set out in the landmark case of Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, have been greatly eroded by the decisions rendered in the International Shoe Company and McGee cases. In my opinion, however, the United States Supreme Court in those cases did not intend to completely wipe out all of the rules stated in Pennoyer v. Neff, but that it intended merely to hold that the rigid rules set out in that case could be modified or relaxed under certain conditions or circumstances. I feel that the principles of law announced in Pennoyer v. Neff must still be applied, except where they have been specifically modified by the recent Supreme Court decisions. As stated by the court in Delray Beach Aviation *535 Corporation v. Mooney Aircraft, Inc., La. App. 5 Cir., 332 F.2d 135, "* * * although the door of non-resident jurisdiction has been opened wider by International Shoe and McGee, it has not been removed from its hinges." If the majority opinion in the instant suit is allowed to stand, I believe that it will have the effect of completely wiping out any further practical effect of Pennoyer v. Neff.
In the instant suit the only contact which Seacat Offshore has had with Louisiana is on one occasion when it participated with at least six other companies in publishing one advertisement in a Lafayette newspaper, and thereafter in interviewing prospective applicants for overseas employment. Although one of the two persons who did the interviewing in Lafayette was a stockholder in Seacat Offshore, as well as a stockholder in other companies which also were engaged in overseas drilling operations, the evidence convinces me that the advertisement and interview were handled and conducted by Southeastern Drilling Company, and that the only connection which Seacat Offshore had with that project was in being billed later for a proportionate part of the expense which was incurred in the advertisement and interview and in paying its share of that expense. The purpose of that advertisement and interview was not to obtain an employee for any particular company, but was simply to obtain a number of applications for overseas drilling employment in order that these applications could be kept on file in Dallas, Texas, for future reference and use in the event any of the participating companies needed an employee at a later date.
Plaintiff's general application for employment of that type by some company was submitted on February 29, 1960, and it apparently remained on file in Southeastern's office in Dallas for several weeks before Seacat Offshore, needing an employee, asked plaintiff to go to Dallas to discuss the matter. In response to that request plaintiff went to Dallas, and then for the first time discussed with officers of Seacat Offshore the matter of employment by that company. The interview was conducted in Dallas, Texas, the contract was completed in Texas, the contract provides that in case the employee is injured the employer will pay benefits equal in all respects to those accorded under the Texas workmen's compensation law, and I think the evidence clearly shows that the parties intended and expected the contract to be governed by Texas law.
It is true that while in Dallas, plaintiff was informed that he would have to pass a physical examination before he could be employed, and in order to satisfy that requirement plaintiff was examined by a New Orleans doctor. Also, a copy of the completed contract, together with plane tickets and a passport, were mailed by Seacat Offshore from its Dallas office to plaintiff in Louisiana, and that plaintiff boarded a plane in New Orleans for Kuwait. The fact that plaintiff received a physical examination in Louisiana and that he boarded a plane in New Orleans for the overseas destination, however, certainly cannot be considered as contacts by Seacat Offshore with the State of Louisiana.
The majority holds that plaintiff's wages "commenced at the very least on this date (the day he departed from the United States), while he was still in Louisiana." The contract of employment provides that plaintiff's salary "shall commence on the date employee leaves the United States and shall continue until employee returns to the United States." While the majority may be technically correct in holding that his pay began while he was still in Louisiana, that is for that portion of the day which elapsed before he actually boarded the plane, I do not believe that a conclusion or inference is justified that any part of plaintiff's employment was performed in Louisiana or that the employer, Seacat Offshore, conducted any business operations at all in this state.
Under my appreciation of the facts, therefore, the only contact which the employer, Seacat Offshore, has had with Louisiana *536 was on the one occasion when it participated in the advertisement and interview in Lafayette, and even that did not have a substantial connection with the later employment and injury of plaintiff.
The following significant language was used by the United States Supreme Court in the International Shoe Company case:
"* * * due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'"
* * * * * *
"`Presence' in the state in this sense has never been doubted when the activities of the corporation there have not only been continuous and systematic, but also give rise to the liabilities sued on, even though no consent to be sued or authorization to an agent to accept service of process has been given. (citations omitted) Conversely it has been generally recognized that the casual presence of the corporate agent or even his conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to suit on causes of action unconnected with the activities there." (66 S.Ct. 154, 158)
In the McGee case, the court, citing and quoting from the International Shoe Company decision, again held that in order to subject a defendant to a judgment, in personam, if he be not present within the territory of the forum, it is essential that "he have certain minimum contacts with it such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" In that case the court concluded that the non-resident defendant corporation was amenable to the jurisdiction of the California court because "the suit was based on a contract which had substantial connection with that State." The facts in the McGee case, however, showed that the non-resident defendant had solicited a re-insurance agreement with a resident of California, that the offer was accepted in California, that insurance premiums were mailed from that state until the insured's death, and that if plaintiff were not permitted to sue in California he would effectively be deprived of an opportunity to have his claim adjudged. See comments relating to McGee case in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283.
In the instant suit, unlike the facts in the McGee case, the contract was not solicited or entered into in Louisiana, plaintiff did not remain in Louisiana and continue to have business relations with defendant after the contract was entered into, and in estimating or balancing inconveniences plaintiff in this suit would not be prejudiced or deprived of his right to have his claim adjudged by being required to institute his suit in Texas instead of Louisiana. In my opinion, therefore, the McGee case is not applicable to the instant suit.
In Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, the Supreme Court held that a Delaware trust company, which had no office in Florida and transacted no business there, could not be subjected to the jurisdiction of a Florida court through substituted service of process, in spite of the fact that the trust company had a number of contacts with the State of Florida relating to the very agreement which was the subject of the suit. In commenting upon the contacts which the defendant trust company had had with Florida, the court said:
"The agreement was executed in Delaware by a trust company incorporated in that State and a settlor domiciled in Pennsylvania. The first relationship Florida had to the agreement was years later when the settlor became domiciled there, and the trustee remitted the trust income to her in that *537 State. From Florida Mrs. Donner carried on several bits of trust administration that may be compared to the mailing of premiums in McGee. But the record discloses no instance in which the trustee performed any acts in Florida that bear the same relationship to the agreement as the solicitation in McGee. Consequently, this suit cannot be said to be one to enforce an obligation that arose from a privilege the defendant exercised in Florida."
It appears to me that the contacts which the trust company had with the State of Florida in that case were considerably more substantial and significant than were the contacts which Seacat Offshore has had with Louisiana in the instant suit. And yet the court held that they were not sufficient to subject the non-resident defendant to the jurisdiction of the Florida court.
Finally, in Buckley v. New York Times Company, et al, 338 F.2d 470, the United States Court of Appeals for the Fifth Circuit held:
"The law is also clear that sporadic news gathering by reporters on special assignment and the solicitation of a small amount of advertising do not constitute doing business nor engaging in business activity. Whitaker v. McFadden Publications (1939), 70 App. D.C. 165, 105 F.2d 44. The principle of Pennoyer v. Neff, 95 U.S. 714, 24 L. Ed. 565, to the effect that jurisdiction of any court to render an in personam judgment depends upon a de facto power over the defendant's person, and `presence' within the territorial jurisdiction of a court is a prerequisite to the court's being able to bind by judgment, has been changed by International Shoe and McGee only to the extent that `presence' does not mean actual presence in the ordinary sense but `presence' in the constitutional sense; this `presence' in the constitutional sense depends upon a finding from the facts that `minimum contacts,' through a business activity, exist with the forum territory to a degree that the exercise of jurisdiction by maintenance of the case does not `offend "traditional notions of fair play and substantial justice."'"

Considering all of these authorities, I am convinced that Seacat Offshore has not had the "minimal contacts" with the State of Louisiana which are a prerequisite to the state court's right to exercise jurisdiction over it. I think the exercise of jurisdiction over Seacat Offshore by the Louisiana court in this case would "offend traditional notions of fair play and substantial justice."
The majority reasons however, that although the activities of Seacat Offshore in Louisiana have not been continuous and systematic (and thus are not sufficient to satisfy the requirements of the International Shoe Company case) there is a substantial connection between plaintiff's claim and the one isolated instance in which Seacat Offshore did have a contact with Louisiana, and thus under the authority of the McGee case the Louisiana court may maintain jurisdiction. I cannot agree with that reasoning.
As I have already pointed out, I think the McGee case is not applicable because of a substantial difference between the facts of that case and those presented here. I also must disagree with the majority in its conclusion that the advertisement and interview conducted in Lafayette, and in which Seacat Offshore participated as above set out, was a "business activity" of this drilling company which had a substantial connection between the injury which plaintiff allegedly sustained while working in Kuwait.
I agree with the majority that in determining whether the Louisiana court has jurisdiction over the non-resident defendant it is permissible to consider and to balance the inconveniences. As stated in the International Shoe Company case:

*538 "An `estimate of the inconveniences' which would result to the corporation from a trial away from its `home' or principal place of business is relevant in this connection. Hutchinson v. Chase & Gilbert, supra [2 Cir.], 45 F. 2d [139] 141."
If I felt that there was any merit to the observation that plaintiff would have to go to Panama or to Kuwait to sue, then I would agree that the defendant should be subjected to the jurisdiction of the Louisiana court because otherwise plaintiff would be effectively deprived of his right to have his claim adjudged. But, I am convinced that plaintiff can maintain a suit against his employer, Seacat Offshore, in Texas, and considering the inconveniences of all parties I feel that the least injustice would be done by observing the rules of Pennoyer v. Neff and requiring that the suit be instituted there.
The evidence shows clearly, I think, that Seacat Offshore maintained an office in Dallas, Texas. Mr. Taylor, the employee and agent of Seacat Offshore who signed the employment contract in behalf of that company and who managed much of Seacat Offshore's business in the United States, maintained an office for that purpose in Dallas. It was in that office that plaintiff was interviewed for the job by Mr. Taylor, checks drawn on Seacat Offshore were issued, signed and mailed from that office, the contract of employment was completed there, and it was from that office that the copy of the contract and the plane ticket were mailed to plaintiff. Plaintiff testified that when he decided to sign the contract he "called Mr. Maddox and told him I accepted the job and I was signing the contract." Mr. Maddox obviously was acting for and in behalf of Seacat Offshore. He was at his office in Dallas, and plaintiff apparently had no difficulty in locating this agent of Seacat Offshore in that city. No one in this suit has contended, so far as I have been able to find, that Seacat Offshore did not maintain an office in Texas. On the contrary, counsel for Seacat Offshore in their original brief specifically concede that it does maintain an office there. In that brief counsel state:
"In this instance the parties contracted in the light of Texas law by express provision, the contract itself was consummated in Texas, where Seacat has an office, and the work was performed in Kuwait."
In view of the fact that Seacat Offshore clearly maintains an office and conducts continuous business activities in Texas, I can see no logical reason which could be assigned for holding that plaintiff could not maintain a suit there. I agree that it would be more convenient to plaintiff if he were permitted to sue in Louisiana. On the other hand, I am certain that it would be more convenient to defendants if the suit were filed in Texas. It seems to me, however, that the inconveniences are somewhat equally balanced and under those circumstances I think the rules announced in Pennoyer v. Neff are applicable.
If the opinion rendered by the majority in this case is permitted to stand, then it seems to me that any Louisiana merchant who sends a buyer occasionally to New York to buy merchandise could be subjected to the jurisdiction, in personam, of a New York court on the ground that he has had sufficient contact with that state to warrant the exercise of that jurisdiction. Under the majority's interpretation of the law it may be that the Louisiana merchant could be subjected to the jurisdiction of another state solely because he ordered goods by mail from a person in that state or sold or shipped merchandise to a resident of such state. I do not believe that our Supreme Court intended that in such circumstances the defendant should be compelled to go to a distant state to defend an action brought against him there. If the *539 views expressed by the majority in this case are finally determined to be correct, then by the same reasoning it must logically follow that a Louisiana businessman who enters into any type of business transaction with a resident of another state may be required to go to that state to defend a personal action which may be instituted against him there by a resident of that state, simply because that state has an interest in providing its own citizen with a forum and because it is more convenient for the plaintiff to maintain a suit in his own state than at the defendant's domicile. I do not feel that we should make such a radical departure from our "traditional notions of fair play and substantial justice."
I also think the majority erred in refusing to affirm the judgment of the trial court insofar as it maintained the exception filed by Southeastern Drilling Company and dismissed the suit as to that defendant. The issue of whether Southeastern was an employer of plaintiff, or whether it exercised control over plaintiff or was engaged in a joint venture with any of the other defendants, was raised by the exceptions and by the motion for summary judgment which were filed by Southeastern and its insurer, and that issue was fully tried and disposed of by the lower court. The majority concedes that the evidence is not sufficient to show that Southeastern exercised any control over plaintiff or that the parties were engaged in a joint enterprise, but nevertheless it reverses the decision of the trial court and remands the case for trial. In my opinion, Southeastern and its insurer are entitled to a judgment dismissing the suit as to them.
The reasons which I have assigned for dismissing the suit as to Seacat Offshore apply also to Seacat Marine. This last named foreign corporation also has not had the "minimal contacts" with Louisiana which are a prerequisite to subject it to the jurisdiction of a court of this state.
For these reasons, I respectfully dissent from the majority opinion.
On Applications for Rehearing.
En Banc. Rehearings denied.
HOOD, J., is of the opinion that a rehearing should be granted.
NOTES
[1] "If the foreign corporation is not one required by law to appoint an agent for the service of process, but has engaged in a business activity in this state, service of process in an action or proceeding on a cause of action resulting from such business activity in this state, or for any taxes due or other obligations arising therefrom, may be made on any employee or agent of the corporation of suitable age and discretion found in the state. If such employees or agents are no longer in the state, or cannot "be found after diligent effort, the officer charged with the duty of making the service shall make his return to the court, stating the efforts made by him to secure service and the reason why he was unable to do so. Thereupon the court shall order that service shall be made on the secretary of state, or on some other individual in his office whom the secretary of state may designate to receive service of process. * * *"
[2] Such Louisiana suit is authorized when such foreign corporation has not done sufficient business here as to require appointment of a Louisiana agent for service of process here. See Louisiana Law Institute Explanatory Note to 1960 amendment of LSA-R.S. 13:3471(1).
[3] The court of appeal report of the case, 42 So.2d 371, succinctly summarizes the relevant non-Louisiana facts of the case at 42 So.2d 372-373: "It is conceded by the plaintiff that the contract of employment was originally confected in Nashville, Tennessee and that plaintiff, after volunarily leaving the employment of the Sternberg Dredging Company, was again employed by that Company in Jacksonville, Florida, and that the accident occurred in the State of Arkansas."